FRANK R. HORTON, JR., v. WILSON & COMPANY, a CORPORATION.

(Filed 28 April, 1943.)

**1. Master and Servant § 63: Statutes § 5a—**

In dealing with a Federal law it is incumbent upon the State courts to apply the rules of construction obtaining in the Federal jurisdiction.

**2. Master and Servant § 65—**

Under the Federal Fair Labor Standards Act, to enable an employee to recover, it is not necessary that all of plaintiff's efforts be directed to the interstate commerce side of defendant's business. It is sufficient if they directly aid in that enterprise.

**3. Same—**

An employee is "engaged in commerce," under the Federal Fair Labor Standards Act, if his services—not too remotely, but substantially and directly—aid in such commerce. If the business is such as to occupy the channels of interstate commerce, any employee, who is a necessary part of carrying on that business, is within its terms.

**4. Same—**

In an action by plaintiff to recover from defendant wages and damages, under the Federal Fair Labor Standards Act of 1938, where the evidence showed that defendant is engaged in the distribution and sale of food products over a large portion of the United States, that its Raleigh branch received these products mostly for outside the State, stored them locally, sold and distributed same only within the State, that plaintiff was "Cashier" and later "Office Manager" of the Raleigh branch, among his duties were handling and accounting for the cash, remitting profits to home office, making up pay rolls and vouchers therefor, receiving and checking invoices for all products shipped in and making claims for shortages, maintain profit and loss account, transmitting same to home office and receiving instructions therefrom, the services of plaintiff have a reasonable and substantial connection with the commerce of defendant as defined in the Act and bring plaintiff within its terms.

APPEAL by defendant from *Nimocks, J.,* at September Term, 1942, of WAKE.

The plaintiff sued under the Federal Fair Labor Standards Act of 1938—ch. 676; 52 Stat., 1060; 29 U. S. C. A., S. 201-219—for recovery of overtime wages for a period beginning 24 October, 1939, and ending 23 March, 1940, amounting, as he contends, to $353.15, and the like sum as liquidated damages, totaling $706.30, and costs. The controversy here is over the question whether the services performed by plaintiff bring him within the Act as engaged in interstate commerce. By consent of parties, the case was heard by *Nimocks, J.,* at September Term, 1942, of Wake Superior Court, without a jury, upon the following agreed facts:

"1. The plaintiff is a citizen and resident of Wake County, North Carolina.

"2. This defendant is a corporation duly organized, chartered, existing and doing business under the laws of the State of New Jersey, and is duly domesticated and licensed to do business under the laws of the State of North Carolina.

"3. This defendant, during the period beginning on or about October 24, 1938, and continuing up to the time of the commencement of this action, and including all of the times mentioned in the complaint filed herein, was doing business in the State of North Carolina.

"4. The defendant, at its Raleigh, N. C., branch, during the period of time involved herein, was engaged in the business of selling mostly at wholesale, meat and meat foods wholly within the State of North Carolina, but did not purchase or slaughter livestock in North Carolina. The defendant purchased meat and meat products in various other states and said products were transported, by means of common carriers and other usual transportation agencies, from such other states to defendant's Raleigh, North Carolina, branch for sale. Meats and meat products were received daily or almost daily and were placed in the defendant's coolers and warehouse at Raleigh. These meats and meat products during the period stated were thereafter sold on orders and distributed to retailers and other concerns within the State of North Carolina. The defendant, at its Raleigh, N. C., branch, did not sell any food products outside of the State of North Carolina, or to anyone who resided or did business outside of the State of North Carolina. During the period stated some of the meat and meat foods were sold by. the defendant's Raleigh branch without being processed and without any change and some without being unpacked.

"5. In carrying on its business, this defendant, during the period above mentioned, sold food products to the trade in the area surrounding Raleigh, North Carolina. Such food products were shipped mainly from points in states other than North Carolina to said Raleigh, North Carolina, branch of the defendant.

"6. The moneys received from the sale of said food products by the defendant, Raleigh, North Carolina, branch, were deposited to its credit with the Wachovia Bank & Trust Company, Raleigh, North Carolina. This defendant maintained continuously during said period in said Wachovia Bank & Trust Company a deposit in the sum of $5,000. Each working day during said period the defendant drew a check on Wachovia Bank & Trust Company for the entire credit balance of the defendant in such bank over and above the said $5,000, said check being made payable to Wachovia Bank & Trust Company; and in return for said check Wachovia Bank & Trust Company issued a Cashier's Check for a similar amount payable to the defendant. The defendant each day mailed such Cashier's Check to the Chase National Bank of the City of

New York, State of New York, to be deposited to the credit of the defendant's account. No banking was done at Raleigh, except as herein stated. All disbursements for salaries and operating expenses of the defendant's business handled at its Raleigh, North Carolina, branch were made by the Raleigh cashier by voucher drafts drawn on a Chicago, Illinois, bank, except as to some small items paid from petty cash.

"7. In the operation of its Raleigh branch, the defendant carries on its books an account designated as 'Personal Account,' which is a current account. When shipments of food products are received by the Raleigh branch, the defendant is credited on said account for the invoice amounts of said shipments. Debits are entered on this personal account for all remittances by the Raleigh branch to New York for deposit there to the credit of the defendant, for pay roll disbursements, for general expenses, etc. When a loss is shown from operations for any month, such loss is also debited to this account.

"8. In the operation of its Raleigh branch the defendant also carries on its books a 'Profit and Loss' account. On one side of this account there is shown a record of gross profits from sales of food products. On the other side there is shown a record of expenses, such as salaries, wages, telephone and telegraph charges, trucks, tires, gasoline, and other expenses. This account shows for each month whether there has been a profit or a loss from operations at the Raleigh branch. When there is a profit or a loss, it is transferred to the 'Personal Account' at the end of each fiscal period.

Paragraph omitted.

"9. The plaintiff was employed by the defendant at its Raleigh, North Carolina, branch from November 14, 1938, to March 23, 1940, as 'Cashier' at a weekly wage or salary of $24.00. During the last several months of said employment the plaintiff's title with the defendant was changed to 'Office Manager' of the Raleigh, North Carolina, branch of defendant.

"10. As Cashier and later as Office Manager of the Raleigh, North Carolina, branch of the defendant, the plaintiff had charge of handling cash from sales wholly within the State of North Carolina by the defendant of food products at its Raleigh, North Carolina, branch, made deposits of the defendant's funds derived from such sales with Wachovia Bank & Trust Company at Raleigh, North Carolina, drew checks on said bank almost every day for the defendant for the entire credit balance of the defendant's Raleigh branch over and above $5,000, received from said bank in exchange therefor a Cashier's check for a similar amount payable to defendant, and mailed said Cashier's check to the Chase National Bank of the City of New York, State of New York, for deposit there to the defendant's account, kept the records of hours worked by office

employees and handled the pay roll of the Raleigh branch of defendant and, along with the Manager of the Raleigh branch, signed voucher drafts issued by defendant for salaries and other expenses, received from the Manager of the Raleigh branch of defendant invoices for food products shipped from other states to defendant's Raleigh, North Carolina, branch and checked said invoices against the receiving records to ascertain shortages in shipments, etc., made out claims against defendant's sources of supply, principally from states other than North Carolina, for any shortages and overcharges, and prepared and submitted profit and loss statements of the Raleigh branch of defendant and transmitted them to Chicago, Ill., office of defendant. From time to time during the period stated the plaintiff received direct from the Branch House Accounting Department of the defendant at Chicago, Illinois, bulletins containing instructions concerning his duties as an employee of the defendant.

"11. In addition to social security tax deductions, there was deducted from the plaintiff's wage or salary each week the sum of 20c for premium in Wilson Employees Mutual Benefit Fund and premium for life insurance, which sums were forwarded each month, along with similar deductions from the wages of other employees, to 'Wilson Employees Mutual Benefit Fund of Chicago, Illinois,' and appropriate accounts. The plaintiff computed the deductions and mailed the checks to said fund each month, along with a required report. The plaintiff was also required to keep a record of the hours work for employees, including himself, who numbered approximately eighteen.

"12. Paragraph omitted.

"13. The plaintiff has made demand upon the defendant for the payment of compensation for overtime, that is, for the number of hours worked each week from November 14, 1938, to October 24, 1939, in excess of 44, and for the number of hours in excess of 42 per week during the period beginning October 24, 1939, and ending March 23, 1940, but the defendant never has paid anything to the plaintiff over $24.00 per week and contends that the plaintiff during the period in question was not engaged in commerce or the production of goods for commerce which would entitle him to any additional compensation under the Fair Labor Standards Act of 1938."

Upon these facts, judgment was rendered in favor of the plaintiff for the amount of his demand, and defendant appealed.

*Bailey, Lassiter & Wyatt* and *Douglass & Douglass* for plaintiff, appellee.

*Richard C. Winkler* and *Smith, Leach & Anderson* for defendant, appellant.

SEAWELL, J.   The Fair Labor Standards Act of 1938—Act of 25 June, 1938, chapter 676; 52 Stat. 1060; 29 U. S. C. A., secs. 201-219—with some exceptions not pertinent to this case, provides a schedule of minimum wages and maximum hours for every employee "who is engaged in commerce or in the production of goods for commerce." Secs. 6 (a) and 7 (a).   Section 3 (b) defines commerce as used in the Act as follows: " 'commerce' means trade, commerce, transportation, transmission or communication among the several states or from any state to any place outside thereof."

It has been said that the Congress has not exhausted its full power under the Commerce Clause in this legislation. It may well include categories not now within the confines of the Act. But it has greatly broadened the conception of interstate commerce, and extended its reach or comprehension of the instrumentalities employed, particularly on the human side, as a means of removing burdensome inequalities and as a measure of social justice to those employed, including in the Act a vast number of persons not theretofore considered in this connection, but whose exclusion would defeat the purpose of the Act. Sec. 2 .(a).   In doing so it has stricken down court opinion reflecting a narrower view of the powers of Congress under the Commerce Clause. *Hammer v. Dagenhart,* 247 U. S., 251, 62 L. Ed., 1101; *U. S. v. Darby,* 312 U. S., 100, 85 L. Ed., 609; and has hurdled judicial abstractions thought to be defeative of its purpose. *U. S. v. Darby, supra; Kirschbaum Co. v. Walling,* 316 U. S., 517, 86 L. Ed., 1638; *Walling v. Jacksonville Paper Co.,* 87 (U. S.) L. Ed., 393.

We have freely entertained cases arising under the Wage and Hour Law, although it imposes a liability with respect to damages not of a character heretofore cognizable in our courts. *Hart v. Gregory,* 220 N. C., 180, 16 S. E. (2d), 837; *Crompton v. Baker,* 220 N. C., 52, 16 S. E. (2d), 471; *Overnight Motor Transp. Co. v. Missel,* 316 U. S., 572, 582, 86 L. Ed., 1682, 1691. But we are dealing with a Federal Law, and it is incumbent upon us to apply the rules of construction obtaining in the Federal jurisdiction, regardless of the cliches of interpretation we might otherwise employ.

We are not dealing here with the clause of the Act relating to the production of goods for commerce, nor with the distinctions peculiar to cases where the employee attempts to qualify for the protection of the statute as one who is so engaged. *Hart v. Gregory, supra.*   The clause under which plaintiff claims protection is simpler and broader—"engaged in commerce"—which we think, if it means anything at all, signifies that the employee is so engaged if his services—not too remotely, but substantially and directly—aid in such commerce as above .defined.   With reference to that clause, it is said in *Walling v. Jacksonville Paper Co.,*

*supra:* "It is clear that the purpose of the Act was to extend Federal control in this field throughout the farthest reaches of the channels of interstate commerce." In that connection the opinion quotes from the statement made by Senator Borah, speaking for the Senate Conferees on the Conference Report: ". . . if the business is such as to occupy the channels of interstate commerce, any of the employees who are a necessary part of carrying on that business are within the terms of this bill." 83 Cong. Rec., 75th Cong., 3rd Sess., Pt. 8, p. 9170.

If the plaintiff did so aid the defendant in any phase of its business in which it was itself engaged in interstate commerce, both of them come within the purview of the Act.

In the case at bar, the defendant is not aided by *Walling v. Jacksonville Paper Co., supra,* or the absence in the present case of the conditions thought necessary in the *Walling case, supra,* for the plaintiff's recovery. The plaintiffs in the two cases are not like situated. There, the suit was by one engaged in the local delivery of the goods to customers, and it was necessary to maintain the theory of continuity of the movement in commerce, despite a temporary interruption in defendant's warehouse, in order to connect the employment with the commerce. Here, it may be conceded without detriment to plaintiff's case—or necessary exoneration of the defendant—that the products moving in interstate commerce came to rest in defendant's Raleigh warehouse without further obligation to the "channels of commerce" theory in its local distribution, if, nevertheless, plaintiff's services in any substantial and direct way aided in the interstate commerce in which defendant was actually engaged.

In the case at bar, the plaintiff contends, and we think with reason, that his services, or at least a substantial part of them, were connected with the flow of goods in commerce before they came to rest, if they did so, in the defendant's local warehouse, or in connection with that result. But, that the defendant received its own products by shipment to itself or its agency in this State may have an important bearing upon the functions of its Raleigh branch, the extent and manner in which the commerce at the instance of defendant was projected into this State, the participation therein by its local agency, and the connection of the plaintiff with such commerce.

In one phase of its business, the defendant was unquestionably engaged in interstate commerce: In gathering its materials of trade, slaughtering livestock, and purchasing meat products outside of the State and shipping them to its warehouse in this State for local or intrastate distribution.

Down to the time the products came to rest in the Raleigh warehouse, defendant dealt with them and transported them in interstate commerce, and the agreed facts indicate that its agency here was maintained primarily to aid and facilitate both such transportation and final distribu-

tion within the State.    These products, we think, did not come to rest here without a substantial contribution by the Raleigh agency to that result.

The plaintiff, of course, would not necessarily be engaged in interstate commerce because of his connection with the business of the employer, if his own activities were confined solely to assistance in intrastate distribution.    The question before us is whether the duties performed by the plaintiff could be considered altogether within the pale of defendant's local distribution business within the State, or whether they were essential to or in aid of its interstate commerce.    *Foster v. National Biscuit Co.,* 31 F. Supp., 244; *Walling v. Jacksonville Paper Co., supra; Kirschbaum Co. v. Walling, supra.*

Doubtless some of the duties performed by one in plaintiff's position, or similar position, might fit into the concept of a purely independent, local concern, in no wise engaged in interstate commerce; but they would be just as appropriate or necessary to the conduct and management of an interstate concern with a set-up dealing altogether in interstate commerce.    The acts of the employee, although abstractly similar, take on a different significance according to the activity which they aid.    Others of these duties seem more directly concerned with defendant's interstate commerce.

The Raleigh branch was not autonomous.    The evidence discloses it to be, in effect, an agency of the defendant, integrated with the Chicago office as an interstate set-up, and acting under the control and management of the home office as an efficacious if not necessary instrumentality in keeping its products flowing in interstate commerce from the various shipping points outside the State to its own warehouses in this State. The existence of the branch office at this, the receiving end of the line, was as necessary to the defendant's way of doing business as were the facilities by which the products were collected and put into the flow of commerce.

Amongst the duties performed by the plaintiff were handling cash from sales of products from the Raleigh branch; making deposit of cash in the Wachovia Bank & Trust Co. at Raleigh; drawing checks on such deposits for all sums in excess of $5,000.00, and making daily remittances to the home office; keeping records of hours worked by office employees at the Raleigh branch; handling the pay roll of the employees of the Raleigh branch; signing voucher drafts issued by defendant for salaries of employees and payment of other expenses; receiving invoices from the Manager of the Raleigh branch for food products shipped from other states, and checking invoices against receiving records to determine shortages in shipments; making out claims against defendant's source of supply from other states for shortages and overcharges; maintaining the

profit and loss account of the Raleigh branch of the corporation; preparing and submitting to the Chicago office statements of profit and loss of the Raleigh branch; receiving from the Chicago office, bulletins containing instructions as to his duty as an employee; deducting and transmitting to Chicago social security tax and a weekly sum for premiums in the Wilson Employees Mutual Benefit Fund, with the required report; keeping records of the hours of work of the approximately eighteen employees of the defendant's corporation at its Raleigh branch.

Some of these duties may not be of great significance. It may be difficult upon analysis to classify all of them one way or another, but some of them we think essential to the maintenance of defendant's business, taken as a whole, including its interstate commerce. The plaintiff kept the records of the office generally, without any distinction as to items which might pertain to purely localized business; handled the pay roll of all employees, regardless of whether they were engaged in receiving and storing the incoming products or otherwise; signed vouchers for wages and expenses, the latter presumably including costs of transportation; kept track of the goods moving in commerce to see whether they arrived, and made out claims against the source of supply in other states for shortages and overcharges; dealt directly with the home office in daily transmission of the funds and reports of profit and loss. These duties did not begin with the distribution of the product after it had come to rest in the North Carolina warehouse; they were not all confined to localized activities or to local distribution, or necessary to that branch of the business. They were activated by the necessities of defendant to keep informed as to the interstate movements of its products from points of shipment outside the State, and facilitated their control and reception here. Without some of the services enumerated, whether performed by the plaintiff or some other person, it would seem that the defendant's business of shipping its products to the Raleigh branch would have been impaired, disorganized, or greatly impeded.

It is not necessary that all of plaintiff's efforts be directed to the interstate commerce side of defendant's business. It is sufficient if they directly tended to aid in that enterprise. It is not a question of percentage; the *de minimis* doctrine does not apply in cases of this kind. *Ward v. Central Sand & Gravel Co.*, 33 F. Supp., 40; *Hart v. Gregory,* 218 N. C., 184, 10 S. E. (2d), 644.

There has been no attempt to formulate any general rule applicable to cases of this kind. It is a matter of the application of sound judgment, upon the facts of the particular case and within the limitations of the Act, in fairly appraising the relation of the employee and of his services with respect to the interstate commerce of his employer, where that exists. We think the services of the plaintiff have a reasonable and sub-

stantial connection with such commerce of the defendant—were intended to be and, in fact, were efficacious in its promotion and conduct—and bring him within the protection of the Act. The judgment of the court below is

Affirmed.