No. 35,962

J. H. Baum, *Appellant*, v. A. C. Office Building Company, *Appellee.*

(143 P. 2d 417)

Opinion filed November 6, 1943.

*George Templar,* of Arkansas City, argued the cause for the appellant.

*W. L. Cunningham,* of Arkansas City, argued the cause, and *D. Arthur*

*Walker* and *William E. Cunningham,* both of Arkansas City, were on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action under the fair labor standards act of 1938, sections 201 to 219, Title 29 U. S. C. A., 52 Stat. 1060, for wages, damages, and attorney's fees as authorized under section 16 (b) of the act, appellant claiming that under the facts set forth in his pleadings and in his opening statement he is entitled to recover under both section 6(a) and section 7(a) thereof, which fix a minimum wage and maximum hours for employees "engaged in commerce" or "in the production of goods for commerce." On objection of defendant to the introduction of evidence, which included a motion for judgment on the pleadings and the opening statement of plaintiff, the trial court treated the objection as equivalent to a demurrer, sustained it in its entirety, and rendered judgment for the defendant. The appeal is from the ruling and the judgment.

The question for determination, treating the combined objection and motion as tantamount to a demurrer, is whether upon the allegations of the petition and the opening statement the plaintiff stated a cause of action.

Conceding for purposes of this appeal plaintiff is entitled to recover the amount claimed in his petition, pertinent sections of the fair labor standards act which should be examined in order to arrive at a proper determination of whether plaintiff's work was such as to bring him within the provisions thereof, provide:

"Sec. 6 (a). Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates . . ." (29 U. S. C. A. § 206.)

"Sec. 7 (a). No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce . . ." (29 U.S.C.A. § 207.)

"Sec. 3 (b). 'Commerce' means trade, commerce, transportation, transmission, or communication among the several states or from any state to any place outside thereof." (29 U.S.C.A. § 203 [b].)

"Sec. 3 (i). 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." (29 U.S.C.A. 203 [i].)

"Sec. 3 (j). 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any state; and for the purposes of this

chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any state." (29 U. S. C. A. § 203 [j].)

We shall now consider the allegations of the appellant's pleadings (the petition and an amended petition) giving them the benefit of all the inferences to which they are entitled under our decisions in cases where the pleadings and the opening statement are attacked in a manner similar to that herein described. What did the pleadings disclose? Appellant certainly cannot be heard to complain if we take his construction of their import. In his brief, except for the addition of the correct names of tenants which we supply, he states:

"What did plaintiff plead? From the petition are gleaned these facts: the defendant owned and operated an office building occupied, tenanted and used by persons, firms and corporations [Kanotex Refining Company, Crude Oil Pipe Line Company, Metropolitan Life Insurance Company, Prudential Insurance Company, Kansas Gas and Electric Company, and others]; that said tenants are principally engaged in commerce or in the production of goods for commerce and that plaintiff performs the customary duties of persons charged with the effectual maintenance of such a building in that he operates the boilers to produce heat and hot water necessary to carry on operations of the tenants, keeps elevators, radiators and the electrical system of the building serviced and repaired, operates the elevators which carry tenants, employees, customers, salesmen and visitors, protects the building from fire and theft, repairs halls and stairways used by tenants, keeps the building safe, clean, and habitable and performs all of such work as is required of him, which work is a process or occupation necessary to the protection of goods for commerce by tenants of defendant's building and all tasks and work requested of him by said tenants which is necessary to the production of said goods;' "That the services rendered by plaintiff, which he was employed to perform, were convenient and appropriate or essential and beneficial to the production of goods for consumers or commerce by the tenants of the defendant building company."

We next direct our attention to the facts stated by appellant in his opening statement, omitting, since they are immaterial for our purpose, all statements except those which relate to the tenants occupying the five-story building and the type of business in which they were engaged and to the nature and character of the work performed by appellant while he was employed by the appellee. Summarizing, the following statements were made with reference to tenants occupying the building: the evidence will show that a substantial part of the business carried on in the building was interstate in nature and the business of some tenants was the production of

goods for commerce; the building was occupied by a great many tenants, including: (a) The Kansas Gas & Electric Company occupied office space on the third floor, and correspondence, communications, billings, and everything they did in the operation of their business was carried on in the building; (b) Postal Telegraph Company occupied a corner of the ground floor as an office engaged in the business of transmitting and receiving messages to and from all parts of the United States; (c) Crane Insurance Company was on the ground floor and engaged in an insurance and loan business in Kansas and Oklahoma; (d) Kanotex Refining Company, owning and operating a refinery in Arkansas City, Kan., had an office in the building and from there the officers of the refinery carried on all the business of the company, both of the refinery and all other offices maintained by the company in other states through means of a direct intercommunicating telephone system. The company also processed its advertising matter in the basement of the building, printing part of it there, bundled it there and shipped it to different parts of the country where its products were sold; (e) The AOUW Insurance Company and the Metropolitan Insurance Company occupied offices in the building and engaged in the business of selling policies of insurance, collecting premiums, and transmitting proceeds to home offices outside the state; (f) The Crude Oil Pipe Line Company leased space in the building, maintained a communication system from its office with its pumping stations and pipe line system in Kansas and Oklahoma and directed its business from such office.

Insofar as it pertained to the work performed by appellant in the course of his employment the opening statement detailed those activities and specifically described them as follow: Scrubbing and mopping the floors as was required by the manager of the building; keeping the floors clean, keeping trash from collecting, keeping fruit and banana peelings off the floor; looking after the heating of the building, regulating the heat, and doing everything necessary to make the building convenient and comfortable for all the tenants including the caring for twelve rest rooms in the building; and operating a double elevator requiring manual operation, on which was carried persons engaged in work directly connected with the production of goods for commerce, the operation of which, appellant stated, was a necessary part of the work of tenants carrying on the business of producing goods.

We pause to note, although the petition did not so allege, an al-

legation of the opening statement was that the Kanotex Company, and we repeat, "processed their advertising matter in the basement of the building, printed part of it there, bundled it there and shipped it to different parts of the country where Kanotex products are sold," and that the only other statement, made therein with respect to production of goods for commerce by the tenants, was that a substantial part of the business carried on in the building was interstate in nature and the business of some tenants was the production of such goods for that purpose. The only allegation in the pleadings with respect to the production of goods for commerce by tenants was a general statement in the form of a conclusion that the tenants of the building were principally engaged in commerce or the production of goods for commerce. We note, also, aside from averments detailing the actual labor performed by appellant, the pleadings contain no other allegations which might be construed as bringing his activities within the fair labor standards act except the following conclusions: That the appellant performed all such work as was required of him, which work was a process or occupation necessary to the production of goods for commerce; performed all tasks and work requested of him by the tenants which was necessary for such production; that services rendered by him which he was employed to perform were convenient and appropriate or essential or beneficial to the production of goods for consumers or commerce by the tenants of the building. We note further the fact stated in the opening statement that appellant carried persons engaged in work directly connected in production of goods for commerce on the elevator and the conclusion immediately following that statement of fact that the operation of such elevator was a necessary part of the work of the tenants carrying on the business of producing goods. So it appears, except for the statements and conclusions heretofore just related, there is nothing as far as the record discloses, either in the pleadings or opening statement tending to show that appellant had anything whatsoever to do with the actual work connected with the production of goods for commerce or that he performed any actual work in, on, or about such goods after they were so produced, even if it be conceded goods were produced for that purpose in the building. In our opinion a fair analysis of the pleadings and the opening statement lead to the inescapable conclusion that appellant's position is predicated upon the basis that if the custodian or janitor of an ordinary office building performs the duties customarily required of a

person employed for that purpose in and about the building and in addition operates an elevator on which he carries persons engaged in commerce or the production of goods for commerce, then, although he performs no other work or labor incident to such matters, he is, under the factual situation appearing from the pleadings and opening statement in this case, within the provisions of the fair labor standards act and entitled to compensation as provided for therein.

Thus, it appears, the principal questions to be determined on this appeal are: (1) When is a janitor, elevator operator and general maintenance man of an office building covered by the act, and (2) do the pleadings and the opening statement show the appellant was within its provisions to the extent the sustaining of a demurrer thereto is error?

We shall not attempt to compare or reconcile the many decisions cited by astute counsel for both appellant and appellee who have been able to find cases supporting their respective contentions. Many of these cases deal with factual situations entirely different from those involved in the case at bar where it was not difficult to determine whether provisions of the comparatively new fair labor standards act applied. Such cases are precedents for the situations there involved and the reasoning behind the rules therein announced is helpful in arriving at a conclusion as to the general force and effect of the act. However, they can in no sense be regarded as criterions fixing the rights of parties in every case irrespective of the facts and circumstances involved. The more one turns the pages of history dealing with congressional enactments the more he realizes that when congress reaches over into virgin soil and by legislative fiat puts into operation some new revolutionary scheme which, in whole or in part, substantially changes rights theretofore assumed by the individual to be his for such determination and disposal as he sees fit to make of them, there will be a period of time when resort is had to the courts for judicial determination of doubtful situations arising under the new law, and in many instances a similar era when the courts of the land are not in accord in interpreting its provisions. So, when congress adopted a new statute for federal industrial regulation, known as the fair labor standards act, many border line cases involving the enactment were taken to the courts for determination with the not uncommon result there was not a unanimity in the decisions as to the coverage of the act with respect to the terms "engaged in commerce" or "in the production of goods for commerce"

as used therein. Because of the situation just related we shall not discuss the many cases referred to but will direct attention to a few of the latest ones which we believe are determinative of the issues involved in this appeal.

In giving consideration to the rights of the parties under the act we proceed, of course, on the premise the question is no longer one of the constitutional power to enact the law, but one of statutory construction in applying its provisions to the particular situation involved.

We have very little difficulty, under the facts and circumstances of the instant case, in concluding the appellant was not "engaged in commerce." He was not actually working in commerce and such work as he was doing, conceding it and the business of the tenants in the building to be of the character described in his pleadings and opening statement, was not an activity so clearly related to the movement of commerce as to be a part of it. The rule is now well settled it is the activities of the employee and not those of the employer which are decisive of such a question. Likewise well ·settled is the proposition that coverage of the fair labor standards act depends on the special facts pertaining to the particular business. (See *McLeod v. Threlkeld,* 318 U. S. 754, 87 L. Ed., 63 S. Ct. 1248; *Walling v. Jacksonville Paper Co.,* 317 U. S. 564, 87 L. Ed., 63 S. Ct. 332.) In defining the practical test to be applied in arriving at a determination of such question the court in *McLeod v. Threlkeld,* supra, said:

"The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it. Employee activities outside of this movement, so far as they are covered by wage-hour regulation, are governed by the other phrase 'production of goods for commerce.'"

A similar rule was applied by the supreme court of the United States in *Overstreet v. North Shore Corp.,* 318 U. S. 125, 87 L. Ed. 63 S. Ct. 494, although in its application due to the facts involved, the court held the employees were engaged in commerce whereas in the McLeod case it held they were not so engaged. To the same general effect and specifically referring to janitors and custodians of office buildings is *Stoike v. First Nat. Bank,* 290 N. Y. 195, 48 N. E. 2d 482, reversing the appellate division of the supreme court of New York, reported 264 App. Div. 585, 36 N. Y. S. 2d 390, which

had held a janitor or office porter was engaged in commerce. Certiorari was denied in this case on October 11, 1943, by the supreme court of the United States (see 6 W. H. R. 1022; 64 S. Ct. 50). Also to the same effect is *Rosenberg, et al., v. Semeria; Same v. Lorenzetti,* and *Same v. Hardy,* all recently decided and reported in 6 W. H. R. 859, (137 F. 2d 742). It should be noted the United States Circuit Court of Appeals, ninth circuit, in the case just cited reversed the decision of the district court in *Lorenzetti v. American Trust Co.,* 45 F. Supp. 128, cited by appellant, wherein such court had previously held janitors of an office building were within the provisions of the act. Attention is also directed to the fact certiorari was denied in these cases on October 18, 1943, see 12 L. W. 3130 (322-24), 64 S. Ct. 83.

The question whether the appellant was engaged in the "production of goods for commerce" is one which is not so devoid of difficulty. There can be no doubt congress intended by that language to embrace a wider field of activities within the scope of the act than by use of the term "engaged in commerce." The difficulty arises in determining just how wide that field is in those border-line cases where the facts of a particular case seem to leave room for doubt whether they bring the employee just within or just without the scope of the fair labor standards act. We can, however, proceed on the basis congress did not intend the act should extend to the furthest reaches of federal authority. In *McLeod v. Threlkeld,* supra, it was said:

"In drafting legislation under the power granted by the constitution to regulate interstate commerce and to make all laws necessary and proper to carry those regulations into effect, congress is faced continually with the difficulty of defining accurately the precise scope of the proposed bill. In the fair labor standards act, congress did not intend that the regulation of hours and wages should extend to the furthest reaches of federal authority. The proposal to have the bill apply to employees 'engaged in commerce in any industry affecting commerce' was rejected in favor of the language, now in the act, 'each of his employees who is engaged in commerce or in the production of goods for commerce.' Sections 6 and 7. See the discussion and reference to legislative history in *A. B. Kirschbaum Co. v. Walling,* 316 U. S. 517, 86 L. Ed. 1638, 62 S. Ct. 1116, and *Walling v. Jacksonville Paper Co.,* No. 336, October term, 1942 [317 U. S. 564, ante, 393, 63 S. Ct. 332]. The selection of the smaller group was deliberate and purposeful."

And in *Walling v. Jacksonville Paper Co.,* supra, said:

"In this connection we cannot be unmindful that congress in enacting this statute plainly indicated its purpose to leave local business to the protection of the states (citing cases). Congress did not exercise in this act the full scope of the commerce power. . . ."

We advance further by stating that if appellant is to come within the scope of the act at all it must appear he was engaged in the "production of goods for commerce" under the language "or in any process or occupation necessary to the production thereof" as such language is found in section 3(j) heretofore quoted. There is no claim he was employed in producing, manufacturing, mining, bundling, transporting or in any other manner working on such goods. Was the character of appellant's work and his activities in connection therewith such it can be said he was engaged in a process or occupation necessary to the production of goods for commerce? After a careful examination of all cases cited by counsel, and many others, we have concluded he was not. We refuse to believe congress intended by the enactment of the fair labor standards act to exert its power over interstate commerce upon a purely local activity—in this case an ordinary office building in a mid-western town located in the heart of a rural community—on the pretense that everything everybody does is a contributing cause to the existence of commerce between the states and therefore necessary to its existence. To the contrary, we believe its intention was to exert that power so it would not reach local activities such as are in question. We think the essential test is not whether the employee's activities affect or indirectly apply to the production of goods, but whether they are a part of or so closely related to the production thereof as to require the conclusion they are necessary in order to successfully carry on the production of such goods for commerce. It may well be that the janitor or custodian of a building, where a considerable portion of the space thereof is occupied by concerns which are engaged in the production of goods for commerce, and where he is required to work with, about and around such goods, is covered by the terms of the act. But we refuse to hold the mere fact that some concern produces a small amount of advertising supplies in the basement of a building for distribution, or that some persons engaged in commerce are carried on an elevator in a five-story building when there is no contention the janitor or custodian has anything more to do with commerce or the production of goods for commerce, is sufficient to bring him within the terms of the fair labor standards act and authorize recovery thereunder from his employer, the owner of an ordinary office building. We believe the activities of the janitor, under the circumstances of the instant case were unneces-

sary not necessary, and nonessential rather than essential, to the production of goods for commerce. His work was unsubstantial rather than substantial and was too remote and far removed from the actual production of goods for commerce to justify a holding it was necessary for their production under any practical test which might be applied under the terms of the act.

Appellant cites *Kirschbaum v. Walling*, 316 U. S. 517, 86 L. Ed. 1638, 62 S. Ct. 1116, wherein the facts disclosed two large office buildings, one in Philadelphia and one in the heart of New York City, were occupied by tenants principally engaged in the production of goods for interstate commerce and that the elevator operators actually transported goods so produced. In that case the court, although holding the provisions of the act were applicable, held its application depended upon the character of the employees' activities, and in the opinion said: "In our judgment, the work of the employees in these cases had such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation 'necessary to the production of goods for commerce.'" He points also to *Warren-Bradshaw Co. v. Hall*, 317 U. S. 88, 87 L. Ed. 99, 63 S. Ct. 125, where employees engaged in drilling an oil well were held to be within the scope of the act. That decision was based on the fact that activities of the workmen bore a close and immediate tie to production of oil to be used in commerce, yet, as in the preceding case, it was said the application of the act depended upon the character of the employees' activities.

We do not think the cases just referred to are in conflict with our views, but even so we prefer to rely upon the following cases as precedents supporting our conclusion to the effect the appellant was not engaged in the production of goods for commerce and hence not entitled to recover under the provisions of the fair labor standards act, viz.: *Lofther v. First Nat. Bank of Chicago*, 48 F. Supp. 692, affirmed by the Circuit Court of Appeals on Oct. 27, 1943, and reported in 138 F. 2d 299; *Johnson v. Dallas Downtown Development Co.*, 132 F. 2d, 287, certiorari being denied by the United States Supreme Court in this case on April 19, 1943, 318 U. S. 790; *Tate v. Empire Building Corporation* (United States District Court, eastern district of Tenn.). See 5 W. H. R. 475, affirmed in 135 F. 2d

743, and writ of certiorari denied by the Supreme Court of the United States on October 11, 1943. See 6 W. H. R. 1022; 64 S. Ct. 71, *In re New York Title & Mortgage Co.*, 39 N. Y. S. 2d 893.

One other question remains for determination. Since appellant's opening statement clearly evidenced he was not engaged in commerce or so closely related to the movement of commerce as to be a part of it, and since he attempted to detail the character of the work which he claimed brought him within the scope of the fair labor standards act as one "engaged in the production of goods for commerce" and in doing so confined it to the ordinary duties of a janitor in and about the building and the additional work of running an elevator on which he carried some individuals who were engaged in the production of goods for commerce, namely, those who produced a very small amount of advertising matter for distribution, all of which we have determined did not bring him within the coverage of the act, it must follow conclusions in the pleadings to the effect such work was a process or occupation necessary to the production of goods for commerce, and his services were convenient and appropriate or essential and beneficial to the production of goods for consumers or commerce by the tenants of the office building, do not overcome the admissions made in the opening statement which precluded his recovery. Therefore, the objection to the introduction of evidence and motion for judgment on the pleadings and the opening statement were properly sustained.

The judgment is affirmed.