This action was brought by Jesse Greene in behalf of himself and twenty-two other employees of the Anchor Mills Company, a corporation doing business in Charlotte, North Carolina, to recover sums alleged to be variously due them for unpaid overtime wages and liquidated damages, under the Fair Labor Standards Act of 1938 — (29 U.S.C.A., 201, Act of June, 1938, ch. 1060, et seq.).
The defendant company owned and partly occupied an office building in the city of Charlotte, and rented space therein to the Bell Telephone and Telegraph Company, and other occupants. (The character of the business carried on therein by defendants and other occupants will appear from the findings of fact.) The plaintiffs, in various capacities, serviced this building as employees of the defendant. *Page 715 
Pertinent to the findings of fact, the complaint alleges in part:
"4. The defendant corporation operates textile mills processing cotton and other materials into yarns and other products in interstate commerce, and is engaged in interstate commerce and in the preparation of goods in interstate commerce, and was so engaged at the times mentioned herein.
"5. The defendant corporation buys cotton and other materials from outside the State of North Carolina, and has its cotton and other materials shipped into the State of North Carolina where in its mills said cotton and other materials are processed and manufactured into goods for interstate commerce, and thereafter shipped by rail, truck and otherwise to points outside the State of North Carolina.
"6. The defendant corporation owns, operates and maintains an office building in Charlotte, North Carolina, the same being known as the Johnston Building, in which said building is located the principal office of the defendant, from which it conducts its business of buying cotton and other materials from points outside the State of North Carolina, which said materials are shipped from points without said State into North Carolina, and processed, manufactured and converted in North Carolina, and shipped to points outside said State, and also in said building the defendant rents, leases and lets offices to persons, firms and corporations that are engaged in communication, interstate commerce and the production of goods for commerce and interstate commerce.
"6 1/2. In the operation of its said office building the defendant and its tenants thereof employed the plaintiffs and the persons on whose behalf this action is prosecuted to service the said building and its tenants and their offices, and the said plaintiffs were engaged during the times set forth hereinafter in tending, caring for and servicing the said office building and the offices of the tenants thereof.
"7. In excess of twenty percent of the office space of the defendant hereinbefore mentioned is occupied by the Southern Bell Telephone 
Telegraph Company, which said Company is engaged in interstate commerce and interstate communication, as defined by the said Act."
To these allegations defendant answered:
"4. It is admitted that the defendant operates a textile plant in the Town of Huntersville, North Carolina, and is, in connection with the operation of said textile plant, engaged in interstate commerce and in the preparation of goods for interstate commerce. Except as herein admitted, the allegations of paragraph 4 of the complaint are denied.
"5. It is admitted that in connection with the operation of the aforesaid textile plant, the defendant buys some cotton and other materials from outside the State of North Carolina and has the same shipped to its aforesaid plant at Huntersville, North Carolina, and that there, said *Page 716 
cotton and other materials, together with cotton and materials purchased inside the State of North Carolina, are processed and manufactured into goods for sale and shipment, and that some of the goods thus processed and manufactured are shipped to points outside the State of North Carolina. Except as herein admitted, the allegations of paragraph 5 of the complaint are denied.
"6. It is admitted that the defendant owns, operates and maintains an office building in the City of Charlotte, North Carolina, known as the Johnston Building. It is admitted that the defendant rents office space in said building to a number of persons, firms and corporations. This defendant has no knowledge or information sufficient to form a belief as to the truth of the allegations that such persons, firms and corporations are engaged in communication and interstate commerce. Except as herein admitted, the allegations of paragraph 6 of the complaint are denied.
"6 1/2. It is admitted that the defendant in the operation of the aforesaid office building employs or has employed the plaintiff and all of the persons named in the caption to the plaintiff's complaint for the purpose of servicing and maintaining said office building. Except as herein admitted, the allegations of paragraph 6 1/2 of the complaint are denied.
"7. It is admitted that one of the tenants in the aforesaid office building is the Southern Bell Telephone Telegraph Company, which, as the defendant is informed and believes, is engaged in the business of furnishing facilities for communication by wire. Except as herein admitted, the allegations of paragraph 7 of the complaint are denied."
At the hearing, by stipulation, jury trial was waived and the trial judge proceeded to hear the evidence and find the facts, state his conclusions of law, and render his judgment. The findings of fact included in this judgment are as follows:
"1. This action was commenced by the issuance of summons on April 30, 1943.
"2. At the times referred to in the complaint the defendant owned the seventeen-story office building in Charlotte, North Carolina, known as the Johnston Building; and plaintiffs, under employment by the defendant, worked in the Johnston Building as building service and maintenance employees, being elevator operators, janitors and maids.
"3. The defendant operated the building as a separate department of its business and the plaintiffs had no connection with any phase of the defendant's business apart from their work as building service and maintenance employees.
"4. The occupants of the building, referred to in the evidence, may be classified as follows: *Page 717 
"(a) The Southern Bell Telephone Telegraph Company occupied offices constituting approximately 30% of the entire office space in the building.
"(b) Offices of the Maryland Casualty Company, the Travelers Insurance Company, and the New York Life Insurance Company occupied the office space constituting 1 1/4 floors in the building.
"(c) Employees of the Illinois Central Railroad, Clinchfield Railroad and Baltimore and Ohio Railroad occupied office space of approximately three full offices in the building.
"(d) Officers of American Viscose Corporation, Armstrong Cork Seal Company (one office), Solvay Company (two offices), Allis-Chalmers (two offices), Sinclair Refining Company, Cleveland-Cliffs Coal Company, Pitney-Bowes Postage Meter Company, Fuller Brush Company, U.S. Bobbin 
Shuttle Company, Bemis Bag Company, and Stein, Hall Company (four offices), were located in the building.
"(e) Offices of Western Union Telegraph Company, Abbott, Proctor 
Paine, General Motors Acceptance Corporation, Fruit Dispatch Company, and Crescent Corporation, were located in the building.
"(f) Approximately two floors, or 2/17ths of the entire office space, in the building, were occupied by lawyers, public accountants, local insurance and real estate brokers, local finance companies, architects and a barber shop.
"(g) Offices of the defendant, Anchor Mills Company, occupied approximately one-fourth of the office space on one floor in the building.
"5. None of the occupants of the building engaged therein in the manufacture or production of goods and the space of each occupant was used solely as office space.
"6. The defendant, Anchor Mills Company, owned and operated cotton mills; and from its offices, referred to in paragraph 4 (g), as general headquarters, the defendant conducted its business affairs and exercised general supervision and control over the operations of its mills.
"7. Apart from the defendant itself, the only occupants (companies) engaged in manufacturing are those referred to in paragraph 4 (d); but the manufacturing aspects of their businesses were not conducted, supervised or controlled from the offices in the Johnston Building.
"8. The occupants of much the greater part of the office space in the building were employees of various corporations that conducted interstate business transactions and such employees were so related to interstate business transactions as to be considered engaged in interstate commerce.
"9. The services rendered by the plaintiffs in respect of the building and offices were substantially the same to all occupants, without *Page 718 
distinction on account of the difference in the character of the business in which each occupant was engaged.
"10. The plaintiffs rendered no services to the occupants of the building apart from the servicing of the building and its offices and rendered no service in respect of any of the business transactions of the occupants.
"11. At the times referred to in the complaint the defendant paid to the plaintiffs as compensation for their services less than the amounts to which they would have been entitled had the defendant complied with the provisions of the Fair Labor Standards Act of 1938."
Thereupon, the court concluded "that the evidence, taken in the light most favorable to the plaintiffs, does not show that the plaintiffs or any of them are engaged in interstate commerce or in the production of goods for interstate commerce within the meaning of the Fair Labor Standards Act of 1938 and that, therefore, the defendant's motion for nonsuit should be allowed and upon the facts found, no recovery can be had by the plaintiffs herein."
It was therefore adjudged that plaintiffs recover nothing, and the action was dismissed.
The plaintiffs appealed, assigning error.
The appeal of plaintiffs calls in question the conclusion of the trial court that they are not, upon the facts of the case, within the purview of the Fair Labor Standards Act of 1938, generally known as the Wage and Hour Law; Act of 25 June, 1938, chapter 1060, 29 U.S.C.A., sec. 201, et seq. The benefits of this Act are extended to an employee engaged (1) "in commerce"; or (2), "in production of goods for commerce" — meaning in both instances, of course, interstate commerce. Sections 206 (a) and 207 (a). Commerce is defined as "trade, commerce, transportation, transmission, or communication among the several states or from any state to any place outside thereof." Sec. 203 (b). The employee referred to in the second class is defined as one engaged "in producing, manufacturing, mining, handling, transmitting, or in any other manner working on such goods, or inany process or occupation necessary to the production thereof in anystate." 203 (j).
It is not contended that plaintiff employees are engaged in any service necessary to the manufacture or production of goods intended for interstate commerce, since no manufacture or production of goods was carried on in the office building of the defendant in which they served. But it is contended that plaintiffs' duties in servicing the building bring them within the first named class as being "engaged in commerce" *Page 719 
because some of the occupants of the building which they serviced were so engaged. The appellants rely largely on Kirschbaum v. Walling, 316 U.S. 517,86 L.Ed., 1638, in which it was held that employees performing comparable services in a "loft" building, where production of goods for commerce was carried on, were held to be within the protection of the Act.
We apprehend, however, that plaintiffs are not materially aided byKirschbaum v. Walling, supra. That case and the case at bar differ in factual situation with respect to which the statute itself speaks discriminatively between the classes of employees respectively intended to be covered. The disjunctive "or" does not introduce matter explanatory or identical or interchangeable. An entirely new class is created and brought into the pale of the law by a definition far reaching in its obvious terms and in their reasonable implication — a definition significantly wanting as to the class with which we deal here, "those engaged in commerce." Our reasoning from the law and our deference to well considered cases in the Federal jurisdiction constrain us to reject the more enthusiastic construction placed upon the statute by appellants, and to hold that by the use of the phrase engaged in commerce the Congress did not intend to exhaust all the potentialities of coverage in the field of regulation it has thus entered, or that the description should be expanded to include employees who, like the plaintiffs, more remotely affect that commerce. Kirschbaum v. Walling, supra, 316 U.S. pp. 521-523,86 L.Ed., pp. 646, 647; McLeod v. Threlkeld, 319 U.S. 497, 87 L.Ed., 1538. Since it took a further and more exhaustive definition to include employees of the second class mentioned, who might be said to be twice removed from the channels of commerce — those who were engaged in production of goods intended for commerce, but not yet in its flow, and those who are necessary to such production — it would seem that there was still room and occasion for a similar expansion of the class merely referred to as engagedin commerce, if it had been so intended. The word "necessary" is notoriously elastic — and in different connections has been used to express every shade of meaning between exigency and convenience. The Congress, in its wisdom, did not employ such a modifying word to prevent the drawing of a line between those who are actually engaged in commerce and those who more remotely affect it.
In Kirschbaum v. Walling, supra (loc. cit., p. 521), after a historical review of instances in which the Congress did not see fit to extend its regulation into all areas within the constitutional limit, the Court said:
"We cannot, therefore, indulge in the loose assumption that when Congress adopts a new scheme for Federal industrial regulation, it thereby deals with all situations falling within the general mischief which gave rise to the legislation. Such an assumption might be valid *Page 720 
where remedy of the mischief is the concern of only a single unitary government. It cannot be accepted where the practicalities of federalism — or, more precisely, the underlying assumptions of our dual form of government and the consequent presuppositions of legislative draftsmanship which are expressive of our history and habits — cut across what might otherwise be the implied range of the legislation. Congress may choose, as it has chosen frequently in the past, to regulate only part of what it constitutionally can regulate, leaving to the States activities, which, if isolated, are only local."
The embarrassment to local regulation of similar activities, clearly beyond the Commerce Clause and properly within the province of State action, has not infrequently been a consideration leading to more conservative measures in congressional regulation of industry and its incidents. See historic review in above citations.
Until Congress acts again and provides new definitions for those who are "engaged in commerce," or extends its categories by language which will become the dictionary of the law, we are compelled to give the language used a common sense definition, with the aid of well considered cases.
We have already observed that no definition was attempted in the statute of the phrase employed to designate this class — other than those "engaged" in commerce. There is a frank recognition in the law that those only are to be included who are actually so engaged, and not merely engaged in incidental occupations which might more or less affect it, or even more remotely aid it.
The test, as applied in McLeod v. Threlkeld, supra (loc. cit., p. 497,87 L.Ed., 1543), is thus given:
"The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce, but whether they are actually in or so closely related to the movement of the commerce as to be a part of it. Employee activities outside of this movement, so far as they are covered by wage-hour regulation, are governed by the other phrase, `production of goods for commerce.'" Stoike v. First National Bank (1943),290 N.Y. 195, 48 N.E.2d 482, 88 L.Ed., .....
It is impossible in a matter of this sort to formulate a satisfactory rule of general application, nor can we extract a principle from the decided cases that will enable us to draw the line with an exactness which will satisfy all minds. We are convinced, however, that the line must be drawn in closer proximity than these plaintiffs stand to an actual movement of some sort across State lines, within the definition of "commerce" provided in the statute, whether of things tangible or intangible. The word engaged, we think, has that connotation. It is *Page 721 
regrettable, of course, that because of its poverty, our language does not always afford words of absolute precision; but it is to be noted that when we come to consider those who are to come within the Act because of their connection with the manufacture or production of goods for interstate commerce, the same word "engaged" qualifies production and manufacture, and it was thought essential to enlarge and extend the meaning of that word so as to include employees related to manufacture or production of goods, as these plaintiffs now claim to be related to the movement of commerce. There is, after all, a rather wide margin standing between those who directly participate in such movement and those whose activities are more remotely ancillary thereto.
The course of decision has been very uniform in denying the application of the Act to factual situations and relations similar to those presented in the case at bar. Lofther v. First National Bank of Chicago,138 F.2d 299 (C.C.A. 7th); Johnson v. Dallas Downtown Development Company,132 F.2d 287 (C.C.A. 5th); Rosenberg v. Lorenzetti, 137 F.2d 742 (C. C. A. 9th); Rucker v. First Nat. Bank of Miami, Oklahoma, 138 F.2d 699 (C. C. A. 10th); Tate v. Empire Building Corporation, 135 F.2d 743 (C. C. A. 6th); Cochran v. Florida National Banking Corporation, 134 F.2d 615
(C.C.A. 5th); Johnson v. Masonic Building Company, 138 F.2d 817 (C. C. A. 5th). Amongst the State court decisions holding similarly may be cited the following: Stoikes v. First Nat. Bank of the City of New York,48 N.E.2d 482 (N. Y.); Cecil v. Gradison, 40 N.E.2d 958 (Ohio);Johnson v. Nat. Life Ins. Co., 166 S.W.2d 935 (Okla.); Baum v. A. C.Office Building, 143 P.2d 417 (Cal.); Robinson v. Massachusetts LifeIns. Co., 158 S.E. 441 (Tenn.).
In Walling v. Jacksonville Paper Co., 317 U.S. 564, 87 L.Ed., 460, the Court held that the clause "engaged in commerce" covered every employee "in the channel of interstate commerce," as distinguished from those who merely affect that commerce. This holding is cited in McLeod v. Threlkeld,supra, with the same distinction. This expression must be considered within the frame of its reference, and so considered, applies to those who directly participate in movements or communications within the "channels of commerce."
In Walling v. Jacksonville Paper Co., supra, the Court was dealing with a defendant whose employee was definitely and actually engaged in distribution well within the channels of commerce. The point to which the Court was speaking was whether an employee engaged within the State in completing the shipment, or distributing the goods so shipped, was within the channels of commerce.
There is a reference to Walling v. Jacksonville Paper Co., as cited, inHorton v. Wilson Co., 223 N.C. 71, 25 S.E.2d 437, and neither *Page 722 
the expression referred to nor anything else in that case is at variance with the view here presented. In Horton v. Wilson Co., supra, the defendant was engaged both in interstate commerce and in the local sale and delivery of goods acquired in interstate commerce after they had come to rest in defendant's warehouse in this State; but Horton directly participated in various ways in defendant's interstate commerce.
The judgment of the court below is
Affirmed.