Arthur H. Stoike, Respondent, *v.* First National Bank of the City of New York, Appellant.

Argued January 20, 1943, decided April 15, 1943.

*Lowell Wadmond* and *Oliver P. Scaife,* III, for appellant.

*Robert S. Garson* for respondent.

*Irving J. Levy,* Acting Solicitor, United States Department of Labor (*Morton Liftin, Bessie Margolin, Arthur E. Reyman* and *George L. Clarke* of counsel), for Administrator of Wage and Hour Division, United States Department of Labor, *amicus curiæ,* in support of respondent's position.

LEWIS, J. The plaintiff-respondent has thus far been successful in the prosecution of a claim against his employer, the appellant bank, for overtime compensation which he asserts is due him under the maximum hours provision of the Fair Labor Standards Act. (52 Stat. 1060, ch. 676 [June 25, 1938]; U. S. Code, tit. 29, § 201 *et seq.*)

The case comes to us on an agreed statement of facts (Civ. Prac. Act, § 546) from which it appears that the plaintiff was employed by the defendant bank on November 29, 1937, as a night porter, his duties being to clean portions of the defendant's twenty-one story building at No. 2 Wall Street in the city of New York. Of the twenty-one stories the first four, two mezzanines and two basements were occupied by the defendant as banking quarters, the upper seventeen stories being rented to tenants. It was incumbent upon the defendant's building superintendent to arrange each night for the cleaning of the entire building from top floor to basement. To that end there were employed eleven porters who cleaned first the defendant's banking quarters and then the upper floors occupied by tenants. The plaintiff was in the appellant's employ from November 29, 1937 until he voluntarily left on April 15, 1939. In the early period of his employment — both before and after the effective date of the Fair Labor Standards Act — the plaintiff did considerable work in the defendant's banking quarters, dusting and cleaning tables, chairs and office furniture or scrubbing floors and stairs. During the later period of his employment he spent the greater portion of his working hours cleaning public corridors and washrooms on the upper floors.

The Fair Labor Standards Act is a comprehensive legislative scheme designed by Congress to prevent the shipment in interstate commerce of commodities produced in the United States under labor conditions which, as respects wages and hours, fail to conform to standards set up by the Act. It prescribes a 44-hour week. The plaintiff received a weekly wage of $27, or an average of 56¼ cents an hour figured on the basis of a 48-hour week. Subsequent to the effective date of the Act and during fifteen out of twenty-five weeks after the Act became effective, the plaintiff worked forty-eight hours a week. He claims to be entitled to overtime compensation in the amount of $50.63, plus a like amount as liquidated damages and reasonable attorney's fees and costs.

The defendant resists the demand asserting that upon the agreed facts the Fair Labor Standards Act is inapplicable to the plaintiff's claim and asks for its dismissal. The plaintiff has been awarded judgment at the Appellate Division (unanimous) in the amount claimed for overtime compensation plus liquidated

damages. The present appeal is by leave of the Appellate Division, upon the ground that a question of law is involved which merits review by this court.

The Fair Labor Standards Act (§ 7 subd. a) provides in part: " No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce — (1) for a workweek longer than forty-four hours during the first year from the effective date of this section, * * * , unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

There seems to be no question that the federal statute casts upon the plaintiff the burden of proving that in the performance of work for which he was employed by the defendant he was engaged in interstate commerce or in the production of goods for interstate commerce during the period of asserted overtime employment. (*Warren-Bradshaw Drilling Co.* v. *Hall,* 317 U. S. 88.)

In the argument before us counsel for the plaintiff conceded that dusting and cleaning, as performed under ordinary circumstances, do not constitute interstate commerce. But it is said that when, as in the present case, the functions of dusting and cleaning are performed by one as an employee of a bank, the business of which in part is interstate commerce, the employee is engaged in interstate commerce. The plaintiff's argument is that his labors served to facilitate work performed in the defendant's private banking quarters where commerce starts — where specie and currency are shipped to points outside the State, where credit is entered and where those other services are rendered which are within that wide range of transactions common to commercial banking.

The defendant, for the purpose of the argument only, concedes that at least a part of the banking services performed in its banking quarters constitutes interstate commerce. It contends, however, and the Appellate Division has recognized that this " * * * is not a case where the employee was in anywise engaged in the production of goods for commerce." (264 App. Div. 585, 586.) Accordingly the defendant's argument goes to the narrow question whether the plaintiff, at the time of his

overtime employment, was " *engaged in* " interstate commerce within the intended meaning of section 7 (subd. a) of the Act.

In support of its position we are told by the defendant that, even upon the assumption that its banking business is interstate commerce, the plaintiff has failed upon the record before us to show that the character of his work of cleaning and dusting bore such a relation to the defendant's banking activities as to justify a finding that plaintiff's activities themselves constituted interstate commerce. In other words the defendant, as the employer, does not stress the nature of its business. Rather does it place emphasis upon the character of work done by the plaintiff as its employee — thus conforming with the rule that "* * * the provisions of the Act expressly make its application dependent upon the character of the employees' activities." (*Kirschbaum Co.* v. *Walling,* 316 U. S. 517, 524.)

In reaching a decision favorable to the plaintiff the Appellate Division recognized the fact that Congress had defined certain words and phrases as used in the Act. The statute provides (§ 3, subd. [j]) that " For the purposes of this Act an employee shall be deemed to have been engaged in *the production of goods* if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation *necessary* to the production thereof, in any State." (Emphasis supplied.) But the definition of " commerce " (§ 3, subd. [b]), as that word is used in the Act, is not so broad in scope: " ' Commerce ' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." The Appellate Division determined that there is no substantial distinction between the two categories of employment described by those statutory definitions and ruled that Congress did not intend to differentiate between the two types of employment thus defined. In other words, in construing section 7 (subd. a) of the Act, the Appellate Division seems to have combined the two definitions, quoted above, by transposing the word " necessary " from its context in the definition of " production of goods " to the definition of " commerce." It has thus produced a resulting composite definition which it has adopted as the basis for its ruling that employees who are engaged in activities " *necessary* " — not to the " *production of*

*goods* '' but — to '' *interstate commerce,*'' are entitled to the benefit of the Act. But the statute does not expressly so state. To the contrary, by defining words and phrases used in the Act, Congress made clear its intention to distinguish between employees *engaged in interstate commerce* and those engaged in the *production of goods for interstate commerce.*

We may not disregard the definitive language thus employed; nor may we by judicial construction give effect to an assumed congressional intent. When by definition Congress differentiated between '' commerce '' and '' production of goods for commerce,'' we may not assume it was wholly without purpose. (*Cudahy Packing Co.* v. *Holland,* 315 U. S. 357, 366.) '' When in order to protect interstate commerce Congress has regulated activities which in isolation are merely local, it has normally conveyed its purpose explicitly.'' (*Federal Trade Comm.* v. *Bunte Brothers, Inc.,* 312 U. S. 349, 351.) Furthermore, the legislative history of the enactment of the Fair Labor Standards Act indicates an effort by Congress to restrict the scope of the Act rather than to extend the limits of its field of operation. (See *Kirschbaum* v. *Walling, supra,* pp. 522, 523.)

We think that in framing section 7 (subd. a) of the Act Congress intended definitely to distinguish between the scope of those categories of employees which it described as being '' engaged in commerce '' and those engaged '' in the production of goods for commerce.'' The phrase '' in commerce '' was not intended to include within its scope that wide field of activities which remotely *affect* interstate commerce. Whenever Congress, acting under the commerce clause, has wanted to embrace that broader field it has definitely expressed that purpose. Among many examples of such explicit phrasing is found section 10 (subd. a) of the National Labor Relations Act, (49 Stat. 449–457; U. S. Code, tit. 29, §§ 152 [7], 159 [c], 160 [a]) where power was given to the National Labor Relations Board '' to prevent any person from engaging in any unfair labor practice * * * *affecting* commerce.'' (Emphasis supplied.) In that connection the Supreme Court of the United States in two recent cases — *Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564, and *Higgins* v. *Carr Brothers Co.,* 317 U. S. 572, has pointed out that while Congress saw fit in the National Labor Relations Act (*supra*), to extend federal control to activities '' *affecting*

*commerce,"* it chose to confine the application of the Fair Labor Standards Act within narrower limits. It was that restriction to which the same court had previously referred when, in considering the Fair Labor Standards Act, it said — " The history of the legislation leaves no doubt that Congress chose not to enter areas which it might have occupied." (*Kirschbaum Co.* v. *Walling, supra,* pp. 522, 523.) " The question of the Act's coverage depends on the special facts pertaining to the particular business." (*Walling* v. *Jacksonville Paper Co., supra,* p. 572.)

In our endeavor to interpret the phrase " engaged in commerce " we adopt and apply to our present problem the " practical test " suggested in *Overstreet* v. *North Shore Corp.,* 318 U. S. 125, 130 — was the plaintiff's work of dusting and cleaning the defendant's banking quarters so closely related to interstate commerce as to be " in practice and in legal contemplation a part of it." (See also *Pedersen* v. *Delaware L. & W. R. R. Co.,* 229 U. S. 146, 151; *Shanks* v. *Delaware L. & W. R. R. Co.,* 239 U. S. 556, 560.) By the application of that test we think that one of those " areas " which Congress chose not to occupy when it fixed the scope of section 7 (subd. a) was employment such as the plaintiff's. It is our conclusion that the cleaning operations which plaintiff was required to perform in defendant's banking quarters were not so closely related to the many banking services performed there that we can say as matter of law that plaintiff's cleaning was a part of such banking services and therefore that he was *" engaged in "* interstate commerce. The plaintiff's work of cleaning and dusting the quarters in which the functions of banking are performed, although it may contribute remotely to the comfort and convenience of those whose services are vital to its business, is not a step in the process of banking. Indeed, as we consider the activities of those who conduct the vital functions by which the business of the defendant bank is accomplished, the essential characteristics of that portion of its banking service which is interstate commerce are lost before we reach the position held by the plaintiff. If, under the guise of construing section 7 (subd. a), we extend its application beyond

those employees who are " engaged in " interstate commerce and include that vast number of employees whose work, like that of the plaintiff, only remotely *affects* commerce, we would extend the operation of the Act beyond its intended scope.

We are not unmindful that in *Kirschbaum* v. *Walling (supra)*, the provisions of section 7 (subd. a), with respect to " the production of goods for commerce," have — because of the liberal definition of the phrase " production of goods " (§ 3 [j]) — been given a broad construction. But that case, as we view it, is not controlling here where the plaintiff does not claim we are dealing with a problem involving " the production of goods for commerce."

The judgment of the Appellate Division should be reversed and judgment directed in favor of the defendant on the submitted controversy, with costs in this court. (See 290 N. Y. 864.)

LEHMAN, Ch. J., FINCH, RIPPEY, CONWAY and DESMOND, JJ., concur; LOUGHRAN, J., dissents and votes to affirm on the opinion of the Appellate Division.

Judgment accordingly.