## CALLUS et al. v. 10 EAST FORTIETH STREET BLDG., Inc.

District Court, S. D. New York.

May 28, 1943.

Victor J. Herwitz, of New York City, (Monroe Goldwater, of New York City, and James Goldwater, of Washington, D. C., of counsel), for plaintiffs.

Proskauer, Rose, Goetz & Mendelsohn, of New York City (Joseph M. Proskauer and Harold H. Levin, both of New York City, of counsel), for 10 East Fortieth Street Bldg., Inc.

HULBERT, District Judge.

Fifty-one plaintiffs brought this action on behalf of themselves and other employees and former employees of the defendant 10 East 40th Street Building, Inc., similarly situated for the recovery authorized by Section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

The statute will hereinafter be referred to as the "Act".

The case was tried by the Court without a jury on March 16, 18, 19, 22, 23 and 24.

At the opening of the trial the action was severed as to the defendant Cross & Brown Company and the 10 East 40th Street Building Corporation will hereafter be referred to as the defendant.

There was a partial stipulation as to the facts, including the amount to which the plaintiffs would be entitled if the Court found in their favor.

55 witnesses were called by the plaintiffs for the purpose of showing the area of occupancy and the character of business transacted by each tenant.

There is no substantial dispute of the facts, except as to the inferences to be reasonably drawn therefrom. The issue is whether the plaintiffs, and others, employed by the defendant, as service and maintenance employees, were engaged in commerce or in the production of goods for commerce within the meaning of the Act.

### Findings of Fact.

(1) The defendant is a New York corporation having its principal place of business at 10 East 40th Street, New York, N. Y.

(2) The defendant is the owner of a 48-story and basement office building located at 10 East 40th Street, New York, N. Y.

(3) Defendant's business has consisted of the management and operation of said building, the leasing of space therein to various tenants, and the rendition of the usual type of service incident to the operation and leasing of space in an office building in New York, N. Y.

(4) During the period covered by the complaint plaintiffs were hired by the defendant as maintenance employees of its said office building.

(5) The gross area of said office building available for rental was 234,245 square

---

3 See also McLeod v. Threlkeld, 5 Cir., 131 F.2d 880, decided December 9, 1942.

feet, of which 11 per cent has been unoccupied.

(6) The rentable area of the building has been leased by defendant to, and occupied by, approximately 111 tenants, viz.:

"Class 1. Executive and sales. offices of 20 concerns, carrying on elsewhere the business of manufacturing and mining, occupy 25.8% of the rented area.

"Class 2. Offices of sales agencies representing 17 manufacturers and mining concerns, carrying on elsewhere the business of manufacturing and mining, occupy 9.3% of the rented area.

"Class 3. 24 lawyers, or law firms, occupy 13.6% of the rented area;

"Class 4. The United States Employment Service, an agency of the United States of America, affiliated with the War Man Power Commission, occupies 13.6% of the rented area.

"Class 5. 10 advertising agents and publicity and trade organizations occupy 6.6% of the rented area. (8 tenants, included in Class 1 and Class 2 also arrange for advertising or maintain advertising departments, in addition to their administrative, sales and other activities.)

"Class 6. 7 tenants whose business is engineering and construction occupy 8.9% of the rented area.

"Class 7. 5 private investment, financing and credit organizations occupy 4.7% of the rented area.

"Class 8. Executive offices of 5 import and export concerns occupy 3.7% of the rented area.

"Class 9. 22 miscellaneous tenants, whose business is not of an interstate character, occupy 3.3% of the rented area."

(7) The services rendered and the work done in the defendant's office building by the officers, agents and/or employees of the tenants encompass the following:

"Class 1. Manufacturing and mining companies in this class use their offices for executive and administrative activities, for conferences, and for taking orders for substantial quantities of merchandise of substantial value produced and shipped from their factories and mines elsewhere located to customers in various states. Seven of these companies carry on advertising or publicity work in their offices—in some cases, in separate advertising departments. Generally, the advertising copy is written and, in every case, all printing is done outside of the building.

"Class 2. Sales agencies of manufacturing and mining companies use the offices in the building, to sell a variety of the products of the companies they represent. Orders are taken and are forwarded by mail, telephone, teletype or other means of communication to factory and mines located in various states for shipment of goods to various parts of the country. As a result of the efforts of these agencies, substantial amounts of merchandise of substantial value are shipped across state lines from factories, mines and warehouses, elsewhere located in various parts of the country.

"Class 3. The lawyers and law firms in this class carry on the usual activities incident to the practice of law.

"Class 4. The United States Employment Service places white collar workers in various factories and business houses. Practically all the registrants served by this agency are located in the State of New York, and about 96% of the placements are within the State of New York, of whom about 2% result from referrals from out-of-state branches of the U.S.E.S. in other cities through a nationwide trade job clearance system.

"Class 5. The advertising agents carry on publicity and advertising work using national publications, newspapers and radio.

"A single publishing firm receives stories for fiction magazines which are sold all over the country. These magazines are printed off the premises and are delivered by the printers to an outside firm which distributes them. The work in the building herein consists of the purchase and receipt of scripts, the examination and correction of same and the regular business and financial activities of the firm.

"The officers and employees of the trade organizations are principally engaged in research and correspondence incidental to their operations. They also prepare circulars and in some cases weekly or monthly publications which are elsewhere printed and in most cases distributed from places other than the building herein.

"Class 6. Engineering and construction firms carry on their correspondence and executive and administrative activities, including financing, collection work and estimating on and submission of bids. In some cases, plans are received for approval which

are prepared outside of the building, and in other cases, the officers, agents and employees of these tenants prepare plans and sketches in the building for construction projects located in various parts of the United States and in foreign countries. All blueprints are made by blueprinting firms elsewhere located.

"Class 7. Investment, financing and credit organizations use their offices in the building herein for their executive and administrative work, conferences, correspondence, keeping of records, arranging for loans, and receiving reports concerning the same. The investments, financing and credit work is done in connection with businesses and projects located in various parts of the country.

"Class 8. Executive offices of import and export concerns make arrangements for export and import of a variety of goods of substantial value. The goods are stored at and shipped from places other than the building herein.

"Class 9. Miscellaneous tenants include accountants, a Christian Science Practitioner, dentists, charitable organizations, and other firms, organizations and individuals whose activities are not interstate in character."

(8) There is no manufacturing of any kind carried on in the office building in question, and the percentage of labor and space actually utilized in the building by employees of any of the tenants in connection with the publicity and advertising prepared in or outside of the building has not been mathematically computed, but in relation to the entire volume of business transacted and carried on by the tenants at and from said premises is not substantial.

(9) An average of 50 to 60 persons, including plaintiffs, engaged as maintenance employees of said office building, have engaged in such capacities as elevator starters, elevator operators, window cleaners, watchmen, mechanics and handymen.

(10) These employees have performed the customary duties incident to the effective maintenance and operation of this office building, such as the furnishing of heat and hot water; keeping the elevators, radiators, water and fire sprinkler systems in repair; the maintenance of electric light power systems and appliances; the operation of elevators carrying tenants and employees, customers and clients of tenants, and other passengers; carrying advertising matter, publicity releases, photographic material, magazine layouts, commercial art drawings, printers' and lithographers' proofs, construction plans and specifications, Diesel engine parts, Ediphone machines and parts, samples of merchandise, office furniture and equipment and supplies to and from tenants' premises; protection of the building in tenants' quarters from theft, fire and other damage; repair of hallways, stairways and other common parts of the building; the keeping of the building in tenant's quarters in a clean and habitable condition; renovation of interior parts of the building; and other related tasks.

(11) The labor of the defendant's building service employees has been performed as a useful adjunct and a necessary incident to the successful and efficient operation of said office building and to enable the various tenants to conduct their activities conveniently and efficiently, and said tenants have regularly and continuously had use of and derived the intended benefit from the various facilities so provided.

(12) The plaintiffs and the other building service maintenance employees of the defendant were not compensated for the hours they worked in excess of the standard work week hours provided for by the Act, at the rate of time and one-half for such overtime. However, the lowest paid individual plaintiff and the individual plaintiff working the longest number of hours per week were paid amounts in excess of what they would have received had they been paid the minimum wages for standard hours as provided by the Act and one and a half times such minimum hours worked in excess of such standard hours.

(13) Plaintiffs and the other building service employees of the defendant were not engaged in producing, manufacturing, mining, handling, transporting or in any other manner working on goods of any kind. Nor were they substantially engaged in activities having a close or immediate tie with the production of goods of any kind.

(14) Plaintiffs have not been engaged in trade, commerce, transportation or transmission among the several states or from any state to any place outside thereof.

#### Conclusions of Law.

(1) Jurisdiction was conferred upon this Court by Section 24(8) of the Judicial Code, 28 U.S.C.A. § 41(8).

(2) None of the plaintiffs or any of the other building maintenance employees of the defendant have been engaged in interstate commerce or in the production of goods for commerce within the meaning of the Fair Labor Standards Act of 1938.

(3) The Fair Labor Standards Act of 1938 is not applicable to the plaintiffs' employment.

(4) Plaintiffs have failed to establish a cause of action.

(5) The defendant is entitled to judgment dismissing the complaint and the action.

### Discussion.

In view of Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following Section 723c, it is now generally regarded as superfluous for the trial judge to write a considered opinion in a non-jury cause, and there is less reason to do in this case in view of the recent decision by my colleague, Judge Leibell, in Hinkler v. Eighty-Three Maiden Lane Corporation, D.C., 50 F.Supp. 263, decided May 14, 1943.

Since it is sought by this action to extend the principle applied in Kirschbaum v. Walling (Arsenal Bldg. Corp. v. Walling), 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, in both of which claims of employees, rendering maintenance and operating services in loft buildings principally devoted to the manufacture of goods for commerce, as defined in the Act, were held to be within its provisions, it might be well to point out the current cases in which the district courts have refused to apply the Act in favor of maintenance employees in office buildings. Apparently the first such case was Johnson et al. v. Dallas Downtown Development Co., affirmed 5 Cir., 132 F.2d 287, certiorari denied by the Supreme Court on April 19, 1943. (63 S.Ct. 994, 87 L. Ed. ——.)

■ Of course, the denial of a writ of certiorari imports no expression of opinion upon the merits of the case. United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361; Atlantic Coast Line R. Co. v. Powe, 283 U.S. 401, 51 S.Ct. 498, 75 L.Ed. 1142.

■ In Aguillar v. Standard Oil Co. of New Jersey, 2 Cir., 130 F.2d 154, a petition for certiorari was denied (317 U.S. 681, 63 S.Ct. 201, 87 L.Ed. ——), but the Supreme Court after having subsequently granted certiorari (317 U.S. 621, 63 S.Ct. 437, 87 L. Ed. ——) in Waterman Steamship Co. v. Jones, 3 Cir., 130 F.2d 797, wherein a contrary decision had been rendered, upon its own motion vacated its original order denying certiorari in the Aguilar case. 317 U.C. 622, 63 S.Ct. 433, 87 L.Ed. ——.

However, the denial of certiorari in the Johnson case provokes an examination of the record to determine, by comparison, whether or not there is any similarity in the issues of fact to the case at bar; and it appears to be of some significance that when certiorari was denied in the Johnson case the Supreme Court had already reversed (318 U.S. 125, 63 S.Ct. 494, 87 L. Ed. ——) Overstreet v. North Shore Corp., 5 Cir., 128 F.2d 450, decided by the circuit court before its decision in the Johnson case.

Quite as recent is the case of Stoike v. First National Bank of the City of New York, 290 N.Y. 195, 48 N.E.2d 482 (chiefly relied upon by Judge Leibell).

Other cases involving employees of an office building in which the courts have held that the Act does not apply to its maintenance employees are set forth in a footnote[1].

The only cited case in which the employees of an office building have been held to be within the Act is Lorenzatti v. American Trust Co., D.C.N.D.Cal.S.D., 45 F.Supp. 128; appeal pending (C.C.A. 9).

Counsel for the plaintiffs specifically directed my attention to a decision of this court granting injunctive relief on an application by Walling, as Wage Administrator, v. Casale, Inc., D.C., 51 F.Supp. 520, in which case, instituted by Snyder v. Casale, Inc., this Court had previously denied defendant's motion for summary judgment. In granting the injunctive relief in the Casale case, my colleague, Judge Knox, pointed out: "That business, as now carried on, could not continue without interruption, confusion and delay if, for example, defendant's employees should go on

[1] Lofther v. First Nat. Bank of Chicago, D.C., N.D.Ill. E.D., 48 F.Supp. 692; Patterson v. Memphis Cotton Exchange R. Co. Inc., Tenn.Ch.Ct. 6 W.H.R. 308; Brandell et al. v. Continental Ill. Nat. Bank & Tr. Co., D.C., N.D.Ill. E.D., 43 F.Supp. 781; Cochran v. Florida Nat. Bldg. Corp., S.D.Fla., Miami Div. 45 F. Supp. 830; Tate v. Empire Bldg. Corp., D.C.E.D.Tenn., 5 W.H.R. 475; Johnson v. Masonic Bldg. Co., D.C., S.D.Ga., 51 F.Supp. 527.

532

strike" where the lessees "engage[d] in a substantial amount of business in interstate commerce."

In the above case (Snyder v. Casale, Inc.) the plaintiffs were employees of a garage which serviced trucks operated by the defendant, some at least in the transportation of merchandise over state lines and it is obvious that the relationship of the employees of the garage was more than tenuous; but in the case at bar the plaintiffs have not handled goods in interstate commerce or in the process of production therefor, except in a few cases of samples entering or leaving the building or in other isolated instances such, for example, as the Ediphones and Diesel parts.

As Mr. Justice Frankfurter pointed out in the Kirschbaum case, supra [318 U.S. 517, 62 S.Ct. 1120, 86 L.Ed. 1638]: "There are no fixed points, though lines are to be drawn" by "the gradual process of inclusion and exclusion. * * * And what is reasonably clear in a particular application is not to be overborne by * * * suggesting doubtful and extreme cases" which would be disposed of by drawing lines and by using "something of that common-sense accommodation of judgment to kaleidoscopic situations."

In Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, at page 94, 63 S.Ct. 125, at page 128, 87 L.Ed. ——, Mr. Justice Roberts said: "The labor of the man who made the tools which drilled the well, that of the sawyer who cut the wood incidentally used, that of him who mined the iron of which the tools were made, are all just as necessary to the ultimate extraction of oil as the labor of petitioners. Each is an antecedent of the consequent,—the production of the goods for commerce. Indeed, if petitioners were not fed, they could not have drilled the well, and the oil would not have gone into commerce. Is the cook's work 'necessary' to the production of the oil, and within the Act?"

In the times in which we are living the Court should, I think take judicial notice of the fact that the executives and other representatives of many industries, National and International, visit Washington and New York and other cities and carry on their respective business activities in rooms at the hotels of which they are guests. Would it not be quite as logical to say that the building maintenance employees of those

hostelries, as well as the plaintiffs in this action, are within the Act?

Upon the record this court has felt impelled to draw the line as stated in its findings of fact and conclusions of law.