### CONVEY v. OMAHA NAT. BANK.
### No. 12644.

Circuit Court of Appeals, Eighth Circuit.
Dec. 13, 1943.

Writ of Certiorari Denied March 6, 1944.

See 64 S.Ct. 638.

---

Bolus J. Bolus, of Omaha, Neb., for appellant.

Paul L. Martin, of Omaha, Neb. (Arthur R. Wells and Winthrop B. Lane, both of Omaha, Neb., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal from an order sustaining a motion for summary judgment[1] for defendant in an action brought by defendant's employees for overtime wages and liquidated damages under the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The motion for summary judgment was sustained on the ground that plaintiff and other building maintenance employees on whose behalf the action was brought are not covered by the provisions of the Act.

The instant case was presented for decision coincidentally with Noonan v. Fruco Construction Co., 8 Cir., 140 F.2d 633, decided this date, and the principles therein enunciated are for the most part applicable here.

As stated by the trial court in its findings of fact:

"The defendant is a national banking association and the owner of the office building in question located at Seventeenth and Farnam Streets in the City of Omaha, known as The Omaha National Bank Building. The building consists of eleven floors and a basement. The Bank occupies for its banking business approximately one-fifth of the rentable space, and the balance of the building is rented to a large number of tenants conducting various businesses, including lawyers, insurance agents, real estate men, contractors, a radio broadcasting station, investment companies, a stock broker, and other businesses customarily found in a typical downtown general office building. Some of the tenants are engaged in interstate commerce but no goods are manufactured or produced for commerce in said building.

"The plaintiff brings this action for himself and all other persons similarly situated and it involves only building maintenance employees, to-wit: Persons engaged in the maintenance and operation of the said office building, such as the engineers, janitors, watchmen, painters, and similar employees, and does not involve any employee engaged in the banking operations of the defendant.

"Neither the plaintiff nor those for whom he brought this action are employed by the tenants of the building, nor do they perform any separate service for any of said tenants, but are engaged solely in the maintenance and operation of the defendant's office building for and on behalf of the defendant."

Plaintiff, appellant here, does not claim that he and the other employees on whose behalf this suit was filed were engaged in production for interstate commerce, but asserts that inasmuch as the defendant and various tenants of the building were engaged in interstate commerce, the employees were likewise so engaged. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, cited by appellant, was a case where the services of the employees in rendering heat and light and other conveniences were held necessary to the tenants' production of goods for interstate commerce. In determining, however, whether building maintenance employees are entitled to coverage under the Act, a distinction has been drawn between the situation in which the occupants of the building or owners are "engaged in interstate commerce" and that in which the occupants or owners are engaged in "the production of goods for interstate commerce,"[2] in view of the statutory differ-

---

[1] Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[2] Johnson v. Downtown Dev. Co., 5 Cir., 132 F.2d 287, certiorari denied 318 U.S. 790, 63 S.Ct. 994; Cochran v. Flor-

entiation used by Congress in defining the respective phrases. Section 3, sub-division (j) of the Act, provides: "For the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." Under a less sweeping definition, commerce is defined as "trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." As pointed out in Stoike v. First National Bank, 48 N.E.2d 482, 485, certiorari denied October 11, 1943, 64 S.Ct. 50: "Congress intended definitely to distinguish between the scope of those categories of employees which it described as being 'engaged in commerce' and those engaged 'in the production of goods for commerce.' The phrase 'in commerce' was not intended to include within its scope that wide field of activities which remotely affect interstate commerce."

■ In Johnson v. Dallas Downtown Development Co., 5 Cir., 132 F.2d 287, 289, certiorari denied 318 U.S. 790, 63 S.Ct. 994, a case in which the identical issue here involved was presented, the court stated: "While the provisions of the Act (Sections 6 and 7) with respect to 'the production of goods for commerce' have, because of the liberal definition of production found in the Act (Section 3 (j), been given a broad construction (citations), we do not think that Congress intended that the Act with respect to those who are only 'engaged in commerce' should be stretched and strained to cover every person whose labor is of use or convenience or whose labor in some fashion contributes to the comfort or convenience of one who is so engaged."

■ In McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538 the test laid down by the Supreme Court to determine coverage under the phrase "engaged in commerce" was whether the employee's activities "are actually in or so closely related to the movement of the commerce as to be a part of it," and in Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 497, the test enunciated was whether the work was so intimately related to interstate commerce as to be in practice and in legal contemplation a part of it. It is apparent therefore that the mere fact that the tenants of the building are engaged in interstate commerce does not necessarily mean that the building maintenance employees are likewise engaged in interstate commerce, but the nature and character of the employee's activities must be scrutinized to see whether at the time of his overtime employment he was "engaged in interstate commerce" by reason of the relation of his activities to the business carried on by the occupants of the building in which the services were performed.[3]

■ We do not think that the cleaning, janitor and maintenance operations performed by the employees were in any way closely related to the functions of the various businesses carried on in the building. Although the activities of the employees contributed to the convenience and comfort of the occupants, it is clear that no function of the banking, broadcasting, investment or stock brokerage businesses or legal profession, was performed by the employees, and to extend the operation of the Act to activities such as these, which only remotely affect the commerce in which the tenants and owners of the building are engaged, would stretch the Act beyond its intended scope.

As stated by the court in Lofther v. First National Bank of Chicago, D.C.Ill., 48 F.Supp. 692, 695: "I do not believe that the activities of an elevator operator or a janitor are activities or occupations which are essential or necessary to the carrying on of the banking business, or to the sale by the tenants of steel, or stocks or bonds, or the writing of a brief in a lawyer's office. Even if, as plaintiff insists, the necessity is an economic one rather than a physical one, the fact remains that plaintiffs' activities are services which contribute only to comfort and speed in reaching various portions of the building, and not activities which are economically essential or necessary to carrying on the banking business

---

ida Nat. Bank Bldg. Corp., D.C.Fla., 45 F.Supp. 830, affirmed 5 Cir., 134 F.2d 615; Stoike v. First Nat. Bank, 290 N.Y. 195, 48 N.E.2d 482, certiorari denied 64 S.Ct. 50.

[3] Kirschbaum v. Walling, 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 317 U.S. 564, 571, 63 S.Ct. 332; Hinkler v. Eighty-Three Maiden Lane Corp., D.C. N.Y., 50 F.Supp. 263, 264; Brown v. Minngas Co., D.C.Minn., 51 F.Supp. 363.

or the business of the individual tenants. * * * elevator operators and janitors employed to carry tenants to and from their offices, and to sweep and clean those offices, * * * cannot, by reason thereof, be held to be engaged in the interstate activities of the bank or its tenants."

With but little dissent[4] the decisions of other courts are in accord with our conclusion that appellant and the other building service employees here involved are not covered by the Act when employed in servicing a building in which no production for interstate commerce is carried on.[5]

The Supreme Court has refused to review the decisions in Johnson v. Dallas Downtown Development Co., supra, and Rosenberg v. Semeria, supra, and other relevant cases, noted in the margin, supra, thus leaving in effect the holdings of the Circuit Courts of Appeals for the Fifth and Ninth circuits, that building maintenance employees whose services are performed for tenants or owners not engaged in production for interstate commerce are not covered by the Act.

■ While it is arguable that the establishment of a dual standard is not in consonance with the economic realities which prompted the enactment of the Fair Labor Standards Act, we cannot disregard the definitive language employed by Congress in

---

[4] Lorenzetti v. American Trust Co., D. C.Cal., 45 F.Supp. 128, cited by appellants, and noted by them to be pending in the Circuit Court of Appeals, has been reversed sub nom. Rosenberg v. Semeria, 9 Cir., 137 F.2d 742, 743, and the U. S. Supreme Court has denied certiorari October 18, 1943, 64 S.Ct. 82. The Circuit Court stated:

"Appellees are laborers employed and paid by appellants to do janitorial work in these banks pursuant to the aforementioned service contract. They sweep, mop and dust, empty wastepaper baskets, polish cuspidors, clean toilets and wash down the walls thereof, vacuum rugs, empty inkwells, sweep the sidewalks, etc. * * * claiming to be entitled to the benefits of §§ 6 and 7 of the Fair Labor Standards Act, they sued appellants for overtime wages. The trial court granted judgments in their favor, being of opinion that they are engaged in commerce inasmuch as a substantial part of the activities of the bank in which they serve is interstate in character. * * *

"Since the submission of the cases, the Supreme Court has decided McLeod v. Threlkeld, [319 U.S. 491], 63 S.Ct. 1248, 1251, 87 L.Ed. 1538. The employers there were a partnership with a contract to furnish meals to maintenance-of-way employees of an interstate carrier, the meals being cooked and served in a railroad car attached to a particular gang of workmen and set on the railroad track conveniently to the place of the gang's activities. The employee concerned worked for the partnership as a cook in this car. He was held not within the coverage of the Act, the court saying that 'The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it.' It was thought that employee activities outside of this movement, so far as they are covered by the wage-hour regulation, are governed by the phrase 'production of goods for commerce.'

"Here, as there, the employees concerned are not in any sense engaged in production nor are their activities integrated with the production of goods. Cf. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. The sole argument made on their behalf is that they are 'engaged in commerce.' We are compelled to disagree. Their work appears to us even more remote from the movement or stream of commerce than was the work of the cook in McLeod v. Threlkeld, supra. The holding in that case is controlling.

"The judgments are accordingly reversed."

[5] Johnson v. Dallas Downtown Development Co., 5 Cir., 132 F.2d 287, certiorari denied 318 U.S. 790, 63 S.Ct. 994; Cochran v. Florida Nat. Bank Bldg. Corp., D.C., 45 F.Supp. 830, affirmed, 5 Cir., 134 F.2d 615; Brandell v. Continental Ill. Bank & Trust Co., D.C.Ill., 43 F.Supp. 781; Tate v. Empire Bldg. Corp., D.C.Tenn., 5 W.H.R. 475, affirmed 6 Cir., 135 F.2d 743, certiorari denied Oct. 11, 1943, 64 S.Ct. 71; Stoike v. First Nat. Bank, 290 N.Y. 195, 48 N. E.2d 482, certiorari denied Oct. 11, 1943, 64 S.Ct. 50; In re New York Title & Mortgage Co., 179 Misc. 789, 39 N.Y.S. 2d 893; Johnson v. Great Nat. Life Ins. Co., Tex.Civ.App., 166 S.W.2d 935; Hinkler v. Eighty-Three Maiden Lane Corp., D.C.N.Y., 50 F.Supp. 263; Callus v. 10 East 40th Street Bldg., D.C.N.Y., 51 F.Supp. 528; Johnson v. Masonic Bldg. Corp., D.C.Ga., 51 F.Supp. 527; 6 W.H. Rep. 19; Joseph v. Ray, 10 Cir., 139 F.2d 409. Cf. Lofther v. First Nat. Bank of Chicago, D.C.Ill., 48 F.Supp. 692; Johnson v. Filstow, Inc., D.C.Fla., 43 F.Supp. 930.

framing the Act. "When by definition Congress differentiated between 'commerce' and 'production of goods for commerce,' we may not assume it was wholly without purpose." Stoike v. First National Bank, supra.

Affirmed.