WILLIAM J. O'NEIL, Respondent, *v.* BROOKLYN SAVINGS BANK, Appellant.

First Department, December 21, 1943.

318

*Sedgwick Snedeker* of counsel (*Snedeker & Snedeker*, attorneys), for appellant.

*Max R. Simon* for respondent.

*Robert R. Bruce* of counsel (*John J. Boyle* with him on the brief; *McLanahan, Merritt & Ingraham,* attorneys), for Realty Advisory Board on Labor Relations, Incorporated, as *amicus curiae.*

*Joseph V. Lane, Jr.,* of counsel (*Vincent Keane* with him on the brief; *Louis W. Dawson,* attorney), for Mutual Life Insurance Company of New York, *amicus curiæ.*

*Per Curiam.* We appreciate that the result of our decision may seem harsh. The harshness, however, is inherent in the legislation and in the decisions which have construed it. As was said in *Rigopoulos* v. *Kervan* (140 F. 2d 506): "We see no escape from the statutory language."

Under the circumstances of this case, however, especially in view of the small amount involved and that costs will be awarded to the plaintiff, we think a counsel fee of $100 for services heretofore rendered, in addition to a counsel fee of $50 for services rendered on this appeal, is fair and reasonable. The determination of the Appellate Term and the judgment entered thereon should be modified accordingly and, as so modified, affirmed, with costs of this appeal to the respondent.

CALLAHAN, J. (dissenting). Plaintiff was employed as a night watchman in an eleven-story business building located at 443 Fourth Avenue, New York, N. Y., from November 5, 1938, to May 3, 1940. Two years after leaving his employment he met a friend who had been a fellow worker in the building and who told him that one of the defendant's officers wished to see plaintiff as he had a check for him (plaintiff). When plaintiff called on defendant he was told that a check for $423.16 for overtime wages had been waiting for him, but that. defendant had been unable to locate plaintiff. The plaintiff accepted the check and signed a general release, after that paper had been explained to him. The release recited that there was uncertainty as to whether plaintiff had any enforcible claim under the Federal Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 201 *et seq.*), that the amount due, if any, was difficult of ascertainment, and that the parties desired to settle the claim by payment of the sum mentioned.

Concededly the amount paid was the full amount of plaintiff's claim for overtime wages.

Some time after the receipt and acceptance of these wages, plaintiff commenced the present action in the Municipal Court to recover an additional $423.16 for liquidated damages, and an attorney's fee.

Upon the trial of the action in the Municipal Court there was a dispute as to whether the tenants in 443 Fourth Avenue were engaged in producing goods for commerce.

It appeared that there were twenty lofts in the building which had been rented to twenty-seven different tenants during the period of plaintiff's employment.

Plaintiff called as witnesses employees who testified that nine of these tenants had been engaged in activities which plaintiff claimed showed production of goods for interstate commerce.

Defendant's real estate officer testified that the leases in force during the period of plaintiff's employment provided for the use of the rented space for showroom and office purposes, with covenants against any manufacturing in the premises.

The Municipal Court found in favor of defendant, and dismissed the complaint, thus resolving the disputed issues of fact in defendant's favor. Upon appeal to the Appellate Term, that court reversed the judgment of the Municipal Court, stating that the proof showed that plaintiff was employed in the production of goods for commerce and was, therefore, entitled to recover an additional $423.16 for liquidated damages. It fixed the sum of $200 as a reasonable counsel fee, and adjudged that said sum be paid to the plaintiff.

It thus appears that at the time when the compensation was paid and the release executed, and in fact throughout the present litigation there has been a dispute as to whether the statute (Federal Fair Labor Standards Act of 1938, § 16, subd. [b]; U. S. Code, tit. 29, § 216, subd. [b]) applied to plaintiff, or afforded him any benefits. This dispute did not involve merely a controversy as to the construction of the law but involved factual issues as well, concerning the nature of the activities of the tenants occupying space in the commercial building in which plaintiff worked.

There would seem to be ample consideration for an accord and satisfaction or for a general release, under the circumstances noted. Nevertheless, this court is about to hold that the liquidated damages may be recovered and some attorney's fee must be paid to plaintiff, even though he received his full compensation before suit and gave a general release. The basis of this decision is that the statute and the public policy declared by it prevent any settlement of the claim for liquidated damages. In other words, such damages are collectible because the overtime wages were not paid concurrently with regular wages. This strange and harsh doctrine should not be promulgated unless it is clear that the statute intended such a rule.

The statute in question reads as follows: " Sec. 16. * * *
(b) Any employer who violates the provisions of section 6 or
section 7 of this Act shall be liable to the employee or employees
affected in the amount of their unpaid minimum wages, or their
unpaid overtime compensation, as the case may be, and in an
additional equal amount as liquidated damages. Action to
recover such liability may be maintained in any court of compe-
tent jurisdiction by any one or more employees for and in
behalf of himself or themselves and other employees similarly
situated, or such employee or employees may designate an
agent or representative to maintain such action for and in
behalf of all employees similarly situated. The court in such
action shall, in addition to any judgment awarded to the plain-
tiff or plaintiffs, allow a reasonable attorney's fee to be paid
by the defendant, and costs of the action."

It is to be noted that the section imposes liability for liqui-
dated damages only on an employer who " violates the pro-
visions of section 6 or section 7." Here, the employer has
paid the overtime wages to the last penny. It paid the same
voluntarily and, in fact, without any prior demand therefor
by the employee. The theory on which plaintiff's claim for the
liquidated damages rests is that the courts are to imply a
requirement under section 7 that the overtime be paid at the end
of each week. Delay of any kind is said to make the payment of
liquidated damages mandatory and beyond release, even where
no legal action is required for the collection of the overtime com-
pensation. But the section quoted says that an " Action to
recover such liability may be maintained ", et cetera. " Such
liability " no doubt refers to overtime compensation and liqui-
dated damages. It seems to me, therefore, that the liability
for damages only arises when an action has been made neces-
sary to collect the compensation. The statute does not say
that it shall be deemed to have been violated if the employer
fails to pay the overtime compensation with the regular wages.

It is not contended that an attorney's fee would be collectible
where no action was necessary. It would seem likewise the inten-
tion that the right to damages was dependent on the necessity
for bringing suit.

The question is one of statutory construction, and we are
endeavoring to ascertain Congressional intent. The Fair Labor
Standards Act was adopted after conflicting bills had been
passed by the House and the Senate comprising the Seventy-fifth
Congress. A conference committee was thereupon appointed
and the conferees prepared the bill which was finally adopted.

Neither of the original bills contained any provision similar to section 16 (U. S. Code, tit. 29, § 216), as found in the final bill. In fact, a provision in one of the original bills forbidding any contract waiving any of the benefits under the law was omitted from the final bill, and section 16 substituted as a section to aid enforcement.

We may be best enlightened as to the meaning intended by the language found in the final bill by examining the statements of the conferees to Congress as to their purpose in inserting the new section. In explaining section 16, Representative Keller, one of the conferees, said: " If there shall occur violations of either the wages or hours, the employees can themselves, or by designated agent or representatives, maintain an action in any court to recover the wages due them and in such a case the court shall allow liquidated damages in addition to the wages due equal to such deficient payment and shall also allow a reasonable attorney's fee and assess the court costs against the violator of the law so that employees will not suffer the burden of an expensive lawsuit.'' (83 Cong. Record, p. 9264.) Surely, Representative Keller did not understand that employees would have the right to liquidated damages, unless they were compelled to sue for their compensation. He did not say that delay of payment was to be the basis for liability, but said that failure to pay and the necessity for suit were to be the conditions creating the penalty. Nothing has been called to our attention from the debates to show that any member of Congress gave the section a different meaning. If, contrary to the views expressed by Representative Keller, delay in payment is to be substituted for failure of payment and the necessity of suit as the condition creating double liability, surely more apt language could have been found to express that intention. Under the construction now proposed, no employer would be safe unless he decided correctly, and on each current payday the precise amount of compensation due, despite all the conflicting issues that frequently arise affecting such rights. .

The difficulty which arises in determining the question as to whether the Fair Labor Standards Act applies to maintenance employees in business buildings may be illustrated by a brief reference to the decisions affecting that question. The courts have determined that the application of the act depends on the employees' activities. (*Kirschbaum Co.* v. *Walling*, 316 U. S. 517; *Warren-Bradshaw Co.* v. *Hall*, 317 U. S. 88; *Walling* v. *Jacksonville Paper Co.*, 317 U. S. 564; *McLeod* v. *Threlkeld*, 319 U. S. 491.) But as the Act applies to employees in two

categories, i.e., those engaged in commerce, and those engaged in producing goods for commerce (apparently with a broader base for liability in the latter class of employment), a distinction has been made between maintenance employees where the tenants in the buildings are engaged in the first rather than the second category. (*Kirschbaum Co.* v. *Walling, supra; Stoike* v. *First National Bank,* 290 N. Y. 195.) This distinction arises because the statutory definition of " production of goods for commerce " covers employees " in any process or occupation necessary to the production thereof " and thus includes maintenance employees, whereas, insofar as the statute applies to those engaged in commerce, the definition is narrower. As to the latter class, the test appears to be whether they are actually in, or so closely related to, the movement of the commerce as to be part of it. (*McLeod* v. *Threlkeld, supra.*)

Because of the distinction above noted, the employer who maintains a business building has many confusing issues to determine before he can ascertain whether his maintenance employees are covered by the Act. First, he must inquire into the activities of his various tenants and determine whether they are engaged in intrastate or interstate commerce; if in the latter, whether they are engaged directly in such commerce or in producing goods for commerce. In addition, there is the question of the character of the maintenance employee's work and how closely it is related to the tenants' activities, with a basis for liability where the tenants are producing goods for commerce different from that in the case where they are in the commerce itself. Tenants may change from month to month, or tenants holding over may change their activities. The employer would not know even now (at least not from any authoritative decisions of the courts) whether liability depended on the number of tenants who were engaged in one activity or the other and, if so, what percentage was to control. Is there any wonder that the problem presented has been compared to " an attempt to square the circle "? (*Kirschbaum Co.* v. *Walling, supra.*)

To add to this confusion, as the law is now to be interpreted, all of these conflicting questions must be settled, and settled correctly, on each payday, with a liability for double payment if the employer delays one day to inquire into the facts. If this is the proper construction of the Act, then we may well ponder whether it is one " to help those who toil in factory and on farm " to obtain " a fair day's pay for a fair day's work ", as the Presidential Message stated in recommending the legislation, or one to aid litigious employees and their lawyers.

We are told that public policy compels the construction now being laid down. What about the policy of the law which favors settlement of disputes?

It is quite true that the federal courts have held, and we have agreed, that under the Fair Labor Standards Act an employer may not pay his employee less than the full amount of overtime wages prescribed by the statute without remaining liable for liquidated damages. (*Seneca Coal & Coke Co.* v. *Lofton*, 136 F. 2d 359; certiorari denied 320 U. S. 772; *Campbell* v. *Mandel Auto Parts Corp.*, 264 App. Div. 701.)

It is likewise true that the fact that the employer's problem is perplexing does not warrant a shifting of his burden to the employee. (*Overnight Motor Co.* v. *Missel*, 316 U. S. 572.)

In that case, in upholding the constitutionality of the provision for liquidated damages, the Supreme Court of the United States said that such provision was one for compensation, and not a penalty. There was, however, no holding in that case as to when the liquidated damages accrued or were payable.

I advocate no construction of the statute which would sanction release of the employer from liability for damages where he pays less than the full amount of statutory compensation, nor do I advocate any shifting of the burden presented from the employer to the employee.

The statute has specified no time when the overtime wages must be paid. The intention to permit a reasonable time for payment should be inferred. What is a reasonable time is a relative matter. Accordingly, the employee should be permitted to accept the payment at the time it is offered and waive or release any claim of unreasonable delay.

It is one thing to say an employee may not bargain away his rights to compensation under the Act, and it is quite another to say that he cannot release his right to resort to court for his liquidated damages when his compensation has been paid to him in full. The courts of this State have sanctioned a release by an injured workman of a third-party claim under the Workmen's Compensation Law (*O'Brien* v. *Lodi*, 246 N. Y. 46), and a waiver of minimum wage legislation. (*Ryan* v. *City of New York*, 177 N .Y. 271; see, however, *Campbell* v. *City of New York*, 244 N. Y. 317.) They have permitted an obligor to waive the benefit of the right to deficiency judgment. (*City Bank Farmers Trust Co.* v. *McConnell*, 284 N. Y. 686.) But now we are about to say, although the Federal courts disagree on the question, (*Guess* v. *Montague*, 140 F. 2d 500; *Rigopoulos* v. *Kervan*, 47 F. Supp. 576, affd. on this point 140 F. 2d 506) that a workman may not

accept his full overtime compensation on any date after a current payday and give acquittance for liquidated damages.

I dissent and vote to reverse the determination and order of the Appellate Term and to affirm the judgment of the Municipal Court.

TOWNLEY, UNTERMYER and DORE, JJ., concur in *Per Curiam* opinion; CALLAHAN, J., dissents in opinion in which GLENNON, J., concurs.

Determination of the Appellate Term and the judgment entered thereon modified in accordance with opinion, and as so modified, affirmed, with costs of this appeal to the respondent. Settle order on notice. [See *post*, p. 869.]