## PRESCOTT v. BROADWAY & FRANKLIN STREET CORPORATION et al.

District Court, S. D. New York.

Oct. 14, 1944.

Harry L. Schein, of New York City, for plaintiff.

Stanley G. Horan, of New York City, for defendant Broadway & Franklin Street Corporation.

Carb, Reichman & Luria, of New York City, for defendant Chas. F. Noyes Co., Inc.

CLANCY, District Judge.

Plaintiff was employed at premises 359 Broadway, in the City of New York, a building of five stories with a basement and a sub-basement. He was janitor, fireman, elevator operator, porter and handy man. He is suing for unpaid wages under the statute for the period from October, 1938, to June, 1942.

During this period one floor of the building was vacant; another was occupied by a tenant who bought and sold and sometimes refurbished used typewriters, but this witness's testimony was so vague and contradictory that we are unable to make any relevant finding of fact on it. During that period, or a large part of it, the store floor, basement and at least part of the sub-basement was occupied by a jobber in converted textiles. This tenant employed a stenographer and one shipping clerk who sometimes opened the cases of goods and sorted them as to color and pattern and repacked them accordingly before shipping. A large part of the merchandise of this tenant—the volume or value was not given—was sold interstate. Its connection with the plaintiff's case depends entirely on the sorting operation of the shipping clerk and we do not believe that his operations constitute production of goods for commerce. Section 3(j) of the statute, 29 U.S.C.A.

§ 203(j), says: "An employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods." We think the meaning of "handling" in this context is to be taken from its association with the other participles found in it. The word itself has a primary meaning and a common acceptation as describing labor unskilled except possibly in the most elementary sense and we see no reason why it should be given any narrower one. If it means not more than manual apprehension it must still necessarily imply an immediate connection with the manufacturer and the manufacturing process. The same sentence adds "transportation" which does not appear in the definition of "production" as it could not very well. If it be not obvious that "transportation" in this sentence means only such carriage as the goods undergo within the producer's immediate province, the statute puts it beyond debate for § 15(a) (1), 29 U.S.C.A. § 215(a) (1), makes unlawful transportation after removal of the goods from the place of employment § 15(b), and § 16, 29 U.S.C.A. §§ 215(b) 216, fixes one penalty for such unlawful transportation and a different one for unlawful production. Thus the entire sentence, including "handling", indicates an intent to include all workers in the extensive and progressive process which production can be and so to avoid any effort to exclude the labor of the unskilled or those who do not actually operate the machine from the benefits of the act. Once the merchandise has left the manufacturer's hands and entered the channels of distribution, other considerations prevail to govern its new aspect as the distinction made throughout the act between "commerce" and "production of goods for commerce" evidences. The merchandise may well become the subject of a new manufacture but that is not the case here. Sorting goods in a buyer's shop or warehouse to which they have been transferred from the factory cannot be held to be "handling" within the statutory language of "engaging in the production of goods" because it has no connection or relevance to the process of production. Therefore, while this tenant is engaged in interstate commerce, plaintiff's services rendered to anybody connected with it will not support his claim. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Borella v. Borden Company, 2 Cir., 145 F.2d —; Stoike v. First National Bank, 290 N.Y. 195, 48 N.E.2d 482.

■ The remaining two floors were occupied by a single concern, the Stanley Company. This company manufactured bags and there is no doubt that it produced goods and its witness said that a large part of its manufacture was shipped out of the state though he was at a loss to define what part. His testimony was hesitant and doubtful and dealt exclusively in general statements supported only by an unreliable memory. No details of its business were supplied by the witness and we are without information as to its extent or its output volume measured in any terms. For this reason we do not believe the plaintiff has borne the burden of proof imposed upon him. It is true he has proved that two floors of a sizeable building, containing five stories, a basement and a sub-basement, were occupied by a concern manufacturing an unstated amount of goods, some of which may have been for interstate commerce, but we are not satisfied this is enough. In A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1118, 86 L.Ed. 1638, "large quantities of goods" were produced for interstate commerce. It is hardly reasonable to hold that a mere allotment of floor space in a building to any one business is any evidence that enough goods proceeded therefrom into the channels of interstate commerce to give any character to a service man's work or that a mere percentage of floor space alone can be any safe standard or guide for either an employee or an employer in determining an employee's wage under the Act. It is true that it might without more engender in either employer or employee an opinion that the Act might include them but then either would have to pursue the matter further before reaching a decision. A Court must know more of the business which the plaintiff claims to serve than merely the extent of floor space covered. Plaintiff here has furnished no information upon which any basis can be established for an adjudication that his services were recognizably necessary to production of goods. The administrator has declared that "if less than twenty per cent of the building is occupied by tenants therein engaged in interstate commerce or in the production of goods for

interstate commerce, the Division will take no action to apply the Act to the maintenance employees." This is wholly negative; it only gives a starting point for interest and not for action. We are unable, on the evidence, to make any finding of the business of the Stanley Company on which we might base a conclusion sustaining plaintiff's case. The complaint is dismissed.